Uriel H. Crocker, trustee, *vs.* James Dillon & others.

Suffolk. March 19, 1880; Nov. 18, 1881. — June 26, 1882. W. Allen & C. Allen, JJ., absent.

A testator named R. executor of his will, and R. and D. trustees thereof, and gave full power to them or the survivors of them to deal with the trust estate. He also gave to the trustees specific sums to hold on separate trusts for the benefit of three persons named, and also created a residuary trust fund. R. was duly appointed executor, and subsequently sole trustee. D. was never appointed trustee, and filed in the Probate Court a resignation of his trust. On the same day that R. was appointed sole trustee, his first account, filed some time before, was allowed by the Probate Court, at the request of persons other than the three beneficiaries, and without further notice, in which he credited himself as executor with moneys paid to the trustees of the beneficiaries equal in amount to the sums named in the will. At that time R. had funds in his hands sufficient for this purpose. On the same day, three other accounts, signed by R. and D. as trustees, and containing items of income paid over to the three *cestuis que trust* at different times, were allowed by the Probate Court with the assent of the *cestuis que trust*. A second and final account of R. as executor was subsequently allowed by the Probate Court, showing his disbursements of all the assets in his hands as executor when the first account was rendered, in which

he credited himself with a certain sum paid to himself as trustee of the residuary trust fund. He also filed an account as trustee of the residuary trust fund; and was subsequently removed by the Probate Court from the offices of executor and trustee. *Held*, on a bill in equity, by his successor in the trusts, to determine whether, as between the specific and the residuary *cestuis que trust*, R. as executor had paid to himself as trustee the moneys specifically left in trust, that the accounts filed by him warranted a finding that he had so paid them.

If a person, who is a legatee and also *cestui que trust* under a will, fraudulently receives from the executor of, and trustee under, the will, property which forms part of the principal of the trust fund, and converts it to his own use, a person subsequently appointed trustee may retain, out of the income afterwards coming to the *cestui que trust*, the amount so converted.

Objections to a bill in equity that the plaintiff has an adequate remedy at law, and that the bill is multifarious, are waived by answering and submitting to the jurisdiction of the court, and going to hearing on the merits.

BILL IN EQUITY by Uriel H. Crocker, who had been appointed trustee under the will of James Dillon, and administrator *de bonis non*, with the will annexed, of the estate of said Dillon, in place of one Rand, executor of, and trustee under, said will, who had been removed from both offices by the Probate Court, against James Dillon, Edward S. Dillon, Minnie M. Dillon, Mary E. Brigham, Perry Brigham, Salome M. Haven, Mary Dillon, Margaret Dillon and John Dillon, to obtain the instructions of the court, upon these questions :

First. Whether certain bequests to Rand and John Dillon, as trustees, on separate trusts for Mary E. Brigham, Perry Brigham and Salome M. Haven, had been paid to the trustees by Rand as executor.

Second. Whether the plaintiff, as administrator, had power, in case the bequests should be deemed not to be paid, to sell certain land of the testator for the payment thereof, or whether he should hold the land on the trusts.

Third. Whether the plaintiff, as trustee, should, in accounting with James Dillon, one of the residuary *cestuis que trust* under said will, withhold from his share of income a sum equal to the value of certain property alleged to have been converted by said James to his own use, and of any notes of James held by the plaintiff as trustee.

Fourth. Whether the plaintiff, as trustee, should pay to the residuary *cestuis que trust* the whole of the net income of the residuary trust fund, and, if so, in what proportions.

The case was heard by *Morton*, J., on the report of a master and exceptions thereto; and a decree was entered that the bequests for the benefit of Mary E. Brigham, Perry Brigham and Salome M. Haven had been paid in full; that the plaintiff in accounting with James Dillon should withhold from his share of income the sum of $2505; and that the trustee was to pay one half of the net income of the residuary trust fund to Minnie M. Dillon, one quarter to Edward S. Dillon, and one quarter to James Dillon.

From this decree, Mary E. Brigham, Perry Brigham, Salome M. Haven and James Dillon appealed to the full court. The facts appear in the opinion.

The case was argued in March 1880, and reargued in November 1881.

*H. W. Chaplin*, for the plaintiff.

*M. Storey*, for Mary E. Brigham, Perry Brigham and Salome M. Haven.

*W. W. Vaughan*, for James Dillon.

*H. H. Sprague*, for Edward S. Dillon and Minnie M. Dillon.

ENDICOTT, J. Two questions are now presented in this case: First, whether the three legacies named in the will of James Dillon to one Rand and John Dillon, as trustees for Mary E. Brigham, Perry Brigham, and Salome M. Haven respectively, have been paid to the trustees by Rand as executor. Second, whether from the income of James Dillon, who is one of the *cestuis que trust* under the residuary clause of the will, the plaintiff as trustee can withhold the amount of $2505, which James Dillon has converted to his own use from the principal of the trust fund.

James Dillon died in 1872, leaving a will, in which Rand was named executor, and by the terms of the will he was exempted from giving sureties on his bond. The will was admitted to probate in June 1872. Rand accepted the trust, and gave bond without sureties. By this will the testator gave legacies to his two sisters of $5000 each; and $15,000 in trust to Rand and John Dillon, to pay the income for life to Mary E. Brigham, the principal at her decease to fall into the residue. He also gave to them $5000 in trust, the income to be paid to Perry Brigham, until he attained the age of twenty-one years, the principal then

to be paid to him, but in case of his death before twenty-one to fall into the residue; and a like sum was given to them upon a similar trust in favor of Salome M. Haven. The residue of the estate was to be divided into six equal parts. One sixth to be paid absolutely to each of his two sons, James and Edward S. Dillon, and the remaining four sixths to Rand and John Dillon in trust, the income thereof to be paid over in equal parts to his three children, James Dillon, Edward S. Dillon, and Minnie M. Dillon, during their lives respectively. And provision was made for the distribution of the principal on the death of each beneficiary.

The will evidently contemplates that one trustee might act, as it gives full power to both trustees, or to the survivor, to deal with the trust estate. John Dillon was never appointed trustee, and his resignation of the trust was filed in the Probate Court, and was accepted on June 7, 1875. Rand was not appointed trustee until June 14, 1875, when he gave bond without sureties under the St. of 1873, *c.* 122, and received a certificate of appointment from the Probate Court. On the same day that he was thus appointed sole trustee, his first account as executor, filed sometime after January 1875, was allowed in the Probate Court, at the request of James Dillon, Edward S. Dillon and Minnie M. Dillon, without further notice. This account contained no later date than January 7, 1875, and in it Rand credits himself, as executor, with $15,000 paid to the trustees of Mary E. Brigham, with $5000 paid to the trustees of Perry Brigham, and with $5000 paid to the trustees of Salome M. Haven. It is to be remembered that, simultaneously with the allowance of this account, Rand was appointed sole trustee. Previously to June 14, and on that day, Rand had sufficient personal estate in his hands to pay these sums.

Three other accounts, entitled " trustees' first account," signed by Rand and John Dillon, as trustees for the benefit of Mary E. Brigham, Perry Brigham and Salome M. Haven, were allowed by the Probate Court on June 14, with the written assent of the several *cestuis que trust.* These accounts contained items of income paid over to the several *cestuis que trust,* as received from the executor from time to time prior to January 1875. The payments were made by Rand alone, John Dillon having

taken no active part in the management of the trust before he declined the office. Rand as executor was not bound to pay over these items to himself and Dillon as trustees; but, as these items would be received for the benefit of the beneficiaries, subject only to the contingency that the estate might prove insolvent, the executor might safely advance these amounts, the trustees being liable to return the same, if required by the executor for the payment of debts. But this contingency did not arise, for the estate at that time was perfectly solvent. This course pursued by Rand was in conformity with the decision in *Minot* v. *Amory*, 2 Cush. 377. These accounts, therefore, simply show payment to the trustees before their formal appointment, and before the transfer to them, or the survivor of them, of the principal of the trust funds; and it was proper that they should contain the statement, that no other payments had been made to Dillon and Rand as joint trustees. This statement cannot be regarded as contradictory to the statement in Rand's first account as executor, that he had paid over the several sums due to the trustees of Mary E. Brigham, Perry Brigham and Salome M. Haven, for that fact could not appear until Rand had, by an account, discharged himself as executor, by transferring the funds to himself as trustee. *Conkey* v. *Dickinson*, 13 Met. 51. Rand in his account as executor credits himself with the several payments made in these so-called trustees' accounts.

A second and final account by Rand as executor, was allowed in the Probate Court, in March 1877, showing his disbursements of all the assets in his hands as executor when the first account was rendered, in which he credits himself with $7964.32 paid to the trustees under the will of James Dillon; and, on the same day, the Probate Court allowed a first and second account of Rand as sole trustee, under the residuary clause of the will, for the benefit of James Dillon, Edward S. Dillon and Minnie M. Dillon, in which he charges himself with this sum of $7964.32. He filed no accounts as trustee for the Brighams and Salome M. Haven.

It appears by these accounts that Rand had settled the estate, and accounted for all the personal property in his hands as executor, and had paid over to the several trusts of which he was the trustee the several sums to which they were entitled.

In April 1877, he fled from the Commonwealth, and soon after from the United States, having apparently squandered or appropriated to his own use the great bulk of the funds which by his several accounts he held as trustee. Before he left the United States, and while in New Jersey, James Dillon, one of the beneficiaries under the residuary clause, who held a power of attorney from Rand as trustee to manage the trust estate and make payments on account of it, obtained from him a transfer as executor of one hundred and fifty-five shares of the stock of the Boston Wharf Company, which was known by Dillon to be part of the principal of the trust estate held by Rand. By pledging this stock Dillon raised $4928; a portion of this he paid to Mary E. Brigham as the income of the trust in her favor, a portion to the account of Edward S. Dillon and Minnie M. Dillon, and the balance of $2505 he retained himself. In May 1876, Dillon also obtained from Rand a transfer of twenty shares of stock in the Old Colony Railroad Company, which stood in Rand's name as executor. Dillon sold these shares, and appropriated the proceeds to his own use.

The only personal property of any present value which the plaintiff — who, after Rand's removal, was appointed trustee under the will, and also administrator with the will annexed — has been enabled to obtain as trustee, is nine shares in the Atlantic National Bank. The plaintiff has also received the rents of certain real estate, which is described in an indenture made June 4, 1875, by Rand as executor and James Dillon and Edward S. Dillon, containing a release of James Dillon and Edward S. Dillon to Rand and John Dillon as trustees, and also containing a release by Rand as executor to James and Edward S. Dillon of certain other real estate. This division embraced all the real estate remaining unsold.

After his appointment, the plaintiff received, among other papers left by Rand, a note of Rand to himself as trustee for $7964, being the same amount he had charged himself with as trustee for the Dillons, two notes of $5000 each, signed by him, payable to himself as trustee for Perry Brigham and Salome M. Haven respectively, and a note of $1690. On all these notes, which were dated January 1, 1875, interest was indorsed to January 1, 1877. There was also a note of James Dillon to Rand

as trustee, for a small amount. These notes were admitted by the master, but not on the question of the payment of the trust fund to the trustee. They were competent as showing Rand's management of the trust estate. The master finds that all the notes were made after September 1875. There was no note to himself as trustee for Mary E. Brigham.

There were also put in evidence before the master accounts of the Brigham and Haven trust funds entered by Rand in an account-book during his trusteeship. They purported to show receipts, January 1, 1875, by Rand trustee, of the amounts of those funds. On the account with Mary E. Brigham were entered various dividends on shares of stock in the Atlantic National Bank, the Boston Wharf Company and the Old Colony Railroad Company, together with interest on the note of $1690. Evidence was introduced before the master bearing on the time when the entries were made, but the master merely finds that they were made by Rand while trustee. It does not appear in the master's report, nor was it contended in the argument, that Rand did not in fact pay income to the Brighams and Haven, while he was trustee, under his appointment as such, though he never filed an account to that effect.

This statement shows great irregularity and criminal misconduct on the part of Rand, in the management of the trusts assumed by him under the will. For, as it is expressly agreed that on June 14, 1875, when Rand's first account as executor was allowed, he had in his hands enough personal estate to pay the specific bequests in trust for the benefit of the Brighams and Salome M. Haven, it must be assumed that his defalcation occurred after that time. And the question is whether the loss is to fall upon the trusts created in their favor, or upon the legatees under the residuary clause.

There are two important findings of the master, so far as the first question to be decided is concerned. 1. "I find that, by rendering said accounts as executor and trustee, Rand became and was chargeable, as trustee under the will, with personal property to the amount of $7964.32, held for James, Edward S. and Minnie M. Dillon, with personal property to the amount of $15,000, held for Mary E. Brigham, with personal property to the amount of $5000, held for Perry Brigham, and with personal

property held for Salome M. Haven to the amount of $5000. I find, on the evidence of said accounts, that personal property to the amount of the three sums last named was transferred to the trust on or prior to the fourteenth day of June 1875." 2. "I find that the stocks mentioned were not specifically appropriated to either of the trust funds." The second finding refers to the shares of stock on which dividends had been paid to Mary E. Brigham, some of which shares are now in the hands of the plaintiff; and it is only of importance in that it excludes her from contending that these shares form a part of the trust fund for her benefit.

It is true, as contended by the counsel for the Brighams and Haven, that nothing but the payment of legacies can discharge the claim of legatees upon the testator's estate. And where bequests are given in trust, and the executor and the trustee named in the will are different persons, it must appear that there was a specific and absolute transfer of the trust fund by the executor to a trustee duly qualified to receive it. But where the same person is named both as executor and trustee under a will, and the same hand is to pay and receive the money, there can be no evidence of the actual transfer of the property from himself in one capacity to himself in another, except from some declaration or authoritative and notorious act on his part showing a change in the manner in which the property is held. And an executor who is also trustee under a will cannot be considered as holding any part of the assets in the latter capacity until he has settled an account in the Probate Court as executor, in which he is credited as executor with the amount which he holds as trustee; and such account should not be allowed by the judge of probate, without first requiring him to give bond for the faithful performance of his duties as trustee. *Hall* v. *Cushing*, 9 Pick. 395, 409.

In *Conkey* v. *Dickinson*, 13 Met. 51, 54, it was said by Mr. Justice Wilde, in citing *Hall* v. *Cushing*, " that case, it is true, did not necessarily require a decision on that point; but it was supposed that it would become important on a hearing in chancery, and it was therefore argued by counsel, and the question was decided, after full deliberation; and we see no cause to doubt the correctness of the decision."

But it is contended, that a payment by the executor to himself as trustee can only be established by filing both an executor's account showing payment to the trustee, and a trustee's account showing the receipt of the payment. We are not aware of any case in this Commonwealth where that has been expressly decided to be necessary, and the cases cited by counsel do not sustain the proposition. A sworn account, allowed in the Probate Court, in which the executor credits himself with the amount of such a bequest as a payment to the trustee under the will, he being the trustee named therein, and his appointment at the same time as trustee, and his giving the bond required by law for the faithful performance of his duties as such, would certainly seem to discharge him as executor, and vest the trust fund in him as trustee. His obligation to file an inventory or an account is a duty imposed upon him by his bond, and it cannot be that his failure or neglect to perform such duty as trustee, in regard to the trust fund, can render him still liable only as executor, and not as trustee. It would be a breach of his bond as trustee, and not of his bond as executor.

In *Hall* v. *Cushing, ubi supra,* a testator left his personal property to his children, and directed his executors to invest it and hold it for their education and maintenance, and to divide the principal among them as they became entitled to it respectively under the terms of the will. The action was on the bond of one of the executors, and the alleged breach was that the executor received and held in his hands, while executor, and during the minority of the children, a large amount of personal property, after the payment of all debts and charges in settling the estate, and refused to dispose of and invest it according to the directions of the will. It was held that the action could be maintained, as the executor had neglected his official duty. It was contended by the defendants, that a transmutation of the property was effected by operation of law to the executor as trustee, and his duties as executor ceased, and the sureties on his executor's bond were not liable. But Mr. Justice Wilde said: "Before there could be any transmutation of property, as contended for by the defendants' counsel, the executor must have settled his final account of administration in the Court of Probate, in which the balance due from him as executor should

be allowed to his credit, as being retained by him in his capacity as trustee for the minor children. And such an allowance would not, it is to be presumed, be made by the judge of probate, without first requiring him to give bond for the faithful performance of his duties as trustee."

This case is affirmed in *Conkey* v. *Dickinson*, 13 Met. 51, which holds that, where the same person is both an executor and a guardian, he is not chargeable, as guardian, with the amount of a legacy left to his ward, until he credits himself with it in his account as executor as paid to himself as guardian, and this account is allowed by the Probate Court; and that the fact that he charges himself with the legacy in an account prepared by him as guardian, but not presented to the Probate Court, is immaterial.

In *Newcomb* v. *Williams*, 9 Met. 525, the action was on an executor's bond. Two persons were appointed executors. The testator gave all his property to certain nephews, subject to the payment of his debts, and provided that Russell, one of the executors, should be trustee to hold the same upon certain trusts, and in the manner directed by the will. The executors rendered an account of their administration, showing a balance for which they were accountable, and which was retained in the sole possession of Russell, who was named trustee in the will. No other account was rendered by both executors, but Russell rendered a further account, and the Probate Court ordered that he should pay the balance thereof to the nephews, as directed by the will, but he failed to do so. He had not been appointed or given bond as trustee, and had not assumed or elected to act in that capacity, and the accounts did not show that the balance had been paid to him as trustee. It was held that the taking of the money by Russell under these circumstances did not discharge the executors, although Russell was named sole trustee; and that the action could be maintained on their bond.

In *Elliott* v. *Sparrell*, 114 Mass. 404, which was an action of contract to recover interest upon a legacy, the following facts appeared: Joshua Magoun died in 1857, leaving a will, in which he gave to his granddaughter a legacy of $500, to be paid to her by his executors when she should arrive at the age of twenty-one years, and made further provision as to its distribution in

case of her death before reaching that age, and also this provision: " The said five hundred dollars bequeathed to my granddaughter Lucy C. Elliott, I direct to be taken from my personal estate, before making a division of the same, and invested by my executors for the especial purpose of paying the above-named legacy." John Sparrell and James W. Magoun were duly appointed executors. Lucy C. Elliott, the plaintiff, became of the age of twenty-one years on October 10, 1872, and soon after demanded of the executors the legacy, and the income and interest thereof. James W. Magoun paid her $500, with interest thereon from October 10, 1872; both he and Sparrell refused to pay income or interest thereon accruing prior to October 10, 1872. The executors filed separate accounts. In the account of Sparrell, allowed April 12, 1859, this payment appears: " To legacy to T. J. Elliott's daughter, $500; and in Magoun's account, allowed February 8, 1859, this receipt appears: " February 4, 1858. Cash of John Sparrell, $500." In Magoun's account, allowed May 8, 1860, was the following item of payment: " By cash in his hands reserved for the payment of legacy given by the will of the deceased to be paid Lucy C. Elliott on her arriving at the age of twenty-one years, $500." It was held that it was the clear meaning of the will that the $500 should be separated from the rest of the estate and invested so as to bear interest, and the accumulation would belong to the legatee and became part of the legacy to be paid her at twenty-one. And it was said, " The only question, therefore, is whether the sum of $500 was taken from the other personal estate by the executors, as directed, and set apart as the legacy to the plaintiff. On this point, we think the accounts of the executors are decisive that it was." " It has been so held by the executor, separate from the other personal property, as the legacy of the plaintiff; and this appears in the most authoritative form in which the act of an executor can be established, by his sworn account in the Probate Court." " It is an ' authoritative and notorious act,' showing a change in the manner in which the property was held, as mentioned in *Newcomb* v. *Williams*, 9 Met. 525, 534."

So, upon the facts of the case before us, there were authoritative and notorious acts of Rand showing a change of the property

from himself as executor to himself as trustee, and we are of opinion therefore that the bequests for the benefit of Mary E. Brigham, Perry Brigham and Salome M. Haven have been paid. If there had been sureties on Rand's bonds, we cannot doubt that the sureties on the executor's bond would have been discharged, and those on his bond as trustee held for his defalcation.

The only other question properly presented to us upon this record is whether the plaintiff, as trustee, in accounting with James Dillon, who is one of the *cestuis que trust*, can withhold from his share of the income the amount of $2505, which he has converted to his own use from the principal of the trust fund. The master has found, upon evidence which in our opinion justifies the finding, that James Dillon appropriated the said sum to his own use, knowing the state of the trust estate and that the same was the proceeds of property held as a part of the principal of the trust estate. It is clear that, upon principles of equity, and in justice to the other *cestuis que trust*, the plaintiff ought to be allowed to retain out of the income coming to James Dillon the amount which he has fraudulently abstracted from the trust fund.

The defendant James Dillon contends that the plaintiff is not entitled to the relief which he asks against him, because he has a plain, adequate and complete remedy at law. But it is too late to take this objection, after answering and submitting to the jurisdiction of the court, and taking his chances of a hearing upon the merits. *Dearth* v. *Hide & Leather National Bank*, 100 Mass. 540. *Page* v. *Young*, 106 Mass. 313. *Jones* v. *Keen*, 115 Mass. 170. So the objection that the bill is multifarious should have been taken by demurrer, and is waived by the defendant by going to a hearing upon the merits. 1 Dan. Ch. 346. Story Eq. Pl. § 284. *Oliver* v. *Piatt*, 3 How. 333.

The result is, that the presiding justice who heard the case rightly overruled the exceptions to the master's report, and the decree entered by him should be affirmed.      *Decree affirmed.*