LEWIS J. TOWNSHEND *vs.* OLIVER O. HOWARD, JUNIOR.

Cumberland.　　Opinion March 8, 1894.

*Will. Revocation. Cancellation. Obliteration. R. S., c. 74, § 3.*

A will can be revoked in whole or in part either by cancellation or obliteration.
　R. S., c. 74, § 3.

If that which is essential to the validity of the whole will, as for instance the
　signature of the testator, is cancelled or obliterated, *animo revocandi*, the
　whole will is revoked,

If only a single clause is so cancelled or obliterated, then that clause only is
　revoked.

Such cancellations or obliterations are as effectual when made with a pencil
　as when made with a pen.

*Held,* in this case, that an unconditional revocation of an existing will was
　not defeated by an intention to execute another will, but not carried into
　effect.

ON REPORT.

This was an appeal from the Probate Court, for Cumberland
County, allowing the will of George H. Townshend, deceased.

The appellant, Lewis J. Townshend, brother of the testator,
was granted leave, under R. S., c. 63, § 25, to enter and pros-
ecute the appeal by this court at the October term, 1892, after
the decision reported in 85 Maine, 57.

Among the reasons for appeal put in evidence are the following:

"Because the said instrument purporting to be the last will
and testament of said George H. Townshend, if ever made and
executed by him, was, by him, intentionally destroyed and
revoked in his lifetime by being by him intentionally cancelled
and obliterated, the said Townshend being at the time of sound
mind.

"Because the said George H. Townshend in his lifetime,
intentionally revoked said instrument purporting to be his will,
by intentionally cancelling and obliterating the clauses numbered
second and third therein, and by cancelling and obliterating his
signatures thereto."

About the middle of May, 1889, the testator on his journey from California to his home in Portland, arrived in Denver, Colorado, too sick to proceed further. On the eighth day of June following he made his will, the scrivener retaining the custody of it. On the following day the appellant, his brother, arrived in Denver and took charge of him, remaining until his death, June 28th. Three or four days after his arrival at Denver, the testator sent by his brother, who was his sole heir, a note to the scrivener for the will, saying he wanted it and that he was going to destroy it. The will having been obtained and delivered to the testator, he tore open the envelope containing it and took out the papers. He then asked for a pencil and having interlined and worked on it for some time marking out and changing several clauses, at last crossed off his name with the pencil where it had been signed on each page, and then said to his brother, "There, Lewis, it is all yours; how does it suit you?" He then took it and put it in the envelope and put it in his pocket. In subsequent conversations with his brother, the testator said, "I have got $5000 or $7000 now, and if I die it is all yours. You know I would not take anything away from you." He retained possession of the will all the time afterwards until his death when it appears to have been obtained tortiously by one Wilson from whom it was finally procured by the active intervention of the appellant and appellee, who both testify that it appears now the same as when it was surrendered. There was also found in the same envelope another paper appearing to be a partial copy of the will, admitted to be in Wilson's handwriting, but without signature and omitting a legacy of two thousand dollars to the appellee contained in the first writing or will.

Other material facts are also stated in the opinion.

The appellee also filed two motions which are considered and disposed of in the opinion of the court.

*Geo. Walker*, for Lewis J. Townshend.

Counsel cited : R. S., c. 74, § 3 ; 1 Jar. Wills, 5th Am. Ed. (Randolph & Talcott) pp. 290, 291 note, 293 note 16, 295, 301 ; 2 Greenl. Ev. § 681 ; 1 Red. Wills, 4th Ed. p. 339, citing *Price* v. *Powell*, 3 H. & N. 341 at p. 318 ; *Dan* v. *Brown*, 4 Cow. 483 ; *Avery* v. *Pixley*, 4 Mass. 460.

*Eben Winthrop Freeman*, for Oliver O. Howard, Jr.

Arguments on motions and facts omitted. Counsel cited: (Revocation) *Rich* v. *Gilkey*, 73 Maine, 597; Schoul. Wills, § § 380, 391, 398, 401, n. 2, 408-9, 423, 431, n. 3; 1 Will. Ex. 124, 128-9, 159, 160; 1 Jar. Wills, 135, 291; Pow. Dev. 425; *Benson* v. *Benson*, L. R. 2 P. & D. 174; *Finch* v. *Finch*, L. R. 1 P. & D. 372; *Hitchins* v. *Wood*, 2 Moo. P. C. 355; *Harwood* v. *Goodright*, 1 Cowp. 87; *Bennett* v. *Sherrod*, 3 Ired. Law (N. C.), 303 (40 Am. Dec. 410); *Wikoff's Appeal*, 53 Am. Dec. 600; *Colvin* v. *Fraser*, 2 Hagg. 327, cited in *Collagan* v. *Burns*, 57 Maine, 455; *Winn* v. *Heveningham*, 1 Coll. 638; *Jones* v. *Murphy*, 8 Watts & S. 275. Where a pencil instead of a pen is used for cancelling, the courts regard the act as *prima facie* deliberative. *Hawkes* v. *Hawkes*, 1 Hagg. 321; *Edwards* v. *Astley*, 1 Hagg. 490; *In re Bode*, 5 Notes of Cas. 189; *In re Hall*, L. R. 2 P. & D. 256; *Gardiner* v. *Gardiner*, 65 N. H. 230; Sch. Wills, § 391; 1 Jar. Wills, *291; *Parker* v. *Bainbridge*, 3 Phill. Ecc. R. 321.

When the act of cancelling is not a substantive, independent act, but is connected with and dependent upon another, and both form but one transaction, the entire design and purpose must be considered in order to ascertain whether a revocation has been accomplished. *Onions* v. *Tyrer*, 1 P. Wms. 343 (S. C. 2 Vern. 742,); Case in 3 Eq. Cas. Abr. 776; *Hyde* v. *Mason*, *vid.* 1 Wms. Exors. *130; *Harwood* v. *Goodright*, *supra*; *Short d. Gastrell* v. *Smith*, 4 E. 419; *Perrott* v. *Perrott*, 14 E. 439; *In re Goods of Applebee*, 1 Hagg. 143; *Malone* v. *Hobbs*, 1 Rob. (Va.) 346 (S. C. 39 Am. Dec. 266,); *In re Bode*, *supra*; *Dancer* v. *Crabb & Thompson*, L. R. 3 P. & D. 98; *Hoitt* v. *Hoitt*, 63 N. H. 475; *Gardiner* v. *Gardiner*, *supra*. Counsel also argued that certain declarations of the testator are inadmissible and cited: 1 Woerner Am. Law, 90, n. 5; *Gay* v. *Gay*, 60 Iowa, 415 (46 Am. Rep. 78,); *Pickens* v. *Davis*, 134 Mass. 257; *Coles* v. *Mordaunt*, 4 Ves. 196, n.; *Lovell* v. *Quitman*, 88 N. Y. 377 (42 Am. Rep. 254,); *Jackson* v. *Kniffen*, 2 Johns. 31, (3 Am. Dec. 390); *Boylan* v. *Meeker*, 28 N. J. L. 278; *Clark* v. *Smith*, 34 Barb. 140; *Osgood* v. *Manhattan*

*Co.* 3 Cow. 612; *Shailer* v. *Bumstead*, 99 Mass. 112; *Cotton* v. *Smithwick*, 66 Maine, 360.

SITTING: PETERS, C. J., WALTON, EMERY, FOSTER, HASKELL, WHITEHOUSE, JJ.

WALTON, J. The question is whether a will made by the late George H. Townshend was afterwards legally revoked. We think it was.

A will can be revoked in whole or in part by cancellation or obliteration. R. S., c. 74, § 3. To cancel is to cross out. To obliterate is to blot out. The former leaves the words legible. The latter leaves the words illegible. By either method a will can be legally revoked in whole or in part. If that which is essential to the validity of the whole will is cancelled or obliterated, *animo revocandi*, the whole will is revoked. If only a single clause is so cancelled or obliterated, then that clause only is revoked. And such cancellations or obliterations are as effectual when made with a pencil as when made with a pen.

In *Succession of Muh*, 48 Am. Rep. 242 (35 La. Ann. 394), the rule is aptly expressed thus : "Erasures of clauses in the body of the will affect only the dispositions erased. Erasure of the signature strikes at the existence of the whole instrument."

In *Bigelow* v. *Gillott*, 133 Mass. 102, lines had been drawn through two clauses of a will, and the court held that the effect was to revoke those clauses, and leave the remainder of the will unimpaired. "The cancellation," said the court, "by the testator of the sixth and thirteenth clauses of his will, by drawing lines through them, with the intention of revoking them, was a legal revocation of those clauses."

In *Woodfill* v. *Patten*, 40 Am. Rep. 269 (76 Ind. 575), the testator had drawn lines through his signature with a pencil, and the court held that the act having been done, *animo revocandi*, the will was legally destroyed. "It is not necessary," said the court, "that there should be a destruction in a literal sense of the fabric upon which the words of the testator are written; it will be sufficient if the legal force of the instrument is extin-

guished." And the court held further that it can make no difference in the result whether a pen, a pencil, or some other implement is used to make the erasures. And to the same effect are *Estate of Tomlinson*, 19 Am. St. Rep. 637 (133 Pa. St. 245), and *Myers* v. *Vanderbelt*, 24 Am. Rep. 227 (84 Pa. St. 510).

In the present case, the signatures of the testator are all erased. The testator had signed the will in three places, at the bottom of the first page, at the bottom of the second page, and at the end of the will on the third page. These signatures are all erased with a lead pencil; and the evidence satisfies us that they were erased by the testator himself, *animo revocandi*. The will was evidently one with which he had become dissatisfied. He was possesed of but a small estate. Its value, according to his own estimate, was not more than from five to seven thousand dollars. He had been induced, when away from his home and away from all his friends and relatives, to sign a will giving to a comparative stranger (Oliver Otis Howard, Jr.), a legacy of two thousand dollars. He had known the legatee less than a month. The legatee was not related to him; and it is evident that upon reflection the testator became dissatisfied with this bequest; for, on obtaining possession of the will, he immediately erased it by drawing lines through it with a lead pencil. What then remained of the will was of little importance. It contained only a small legacy of three hundred dollars conditionally given to Frederick W. Murphey, to assist him in getting an education, and the gift of a few books, and other articles of little value, to Shiler G. Cushing. The residue of his property was given to his brother; and, as his brother was his only heir, this clause in the will was of little importance. Without the will, his brother would inherit the whole. With the will (the legacy to Howard being cancelled) he would receive all but three hundred dollars, and the few books and other articles of little value given to Shiler G. Cushing. Under these circumstances, it is not strange that the testator finally resolved to revoke the whole instrument. And the evidence satisfies us that when he erased his signatures such was his pur-

pose.　His brother testifies that he was sitting by his side fanning away the flies; that after George had worked upon the will for some time, he finally crossed off his name in the different places where it had been signed, and then said, "There, Lewis, it is all yours, now." This declaration, made at the very moment of erasing his signatures, confirms what the act itself so clearly indicates, namely, an intention to revoke the whole instrument. It is urged by the learned counsel for the appellee that other marks upon the paper indicate an intention on the part of the testator to make a new will, and that inasmuch as he died without having accomplished that purpose, the revocation of his then existing will should be regarded as deliberative and not operative, and that the doctrine of "dependent relative revocation," should be applied. In other words, that the revocation should be held to be conditional, and that, the condition not having been performed, the revocation should not be allowed to take effect. We can not accept this interpretation of the testator's acts. It is true that some of the marks upon the revoked will indicate an intention on the part of the testator, at the time when they were made, to make another will. But they also indicate that the new will, if made, was to be essentially different from the old one. They show an unmistakable intention on the part of the testator to abrogate, totally and absolutely, the legacy of two thousand dollars to Oliver Otis Howard. Two lines are drawn through it from top to bottom. The legacy is neither enlarged nor reduced; it is totally expunged. And the paper found in the same envelope with the old will, which the appellee claims is a nearly completed draft of the new will which the testator intended to make, contains nothing to indicate that the legacy to Howard, or any portion of it, was to be renewed. The evidence is plenary that the testator intended to cancel and revoke this ill-advised legacy, totally and absolutely. And if we should now annex to its revocation an implied and unperformed condition, by which the legacy should be revived, our firm belief is that, instead of giving effect to the testator's intentions, we should thwart them,

and produce a result the very opposite of what he intended. Neither reason nor the rules of law will justify such a perversion of the testator's intentions.

The appellee's motions,— one to have the appeal dismissed, because his exceptions to the decision of Mr. Justice VIRGIN, granting the appellant leave to enter and prosecute the appeal, were not allowed, and the other to open the case for the introduction of further evidence — have been considered, and are disallowed. It is the opinion of the court that the decision of Mr. Justice VIRGIN was right, and that the exceptions could not be sustained, if they were now properly before the court; that the further evidence proposed to be introduced is not of sufficient importance to justify the expense and delay that would be caused by opening the case for its introduction. It would not change the result if it was now in the case.

It is the opinion of the court, upon the whole case, that the appeal be sustained; that the decree of the probate court be reversed; that the will offered for probate be disallowed; that neither party recover costs against the other; and that the appellee recover no costs against the estate.

*Appeal sustained.*