## Northern Trust Co., as Executor and Trustee, v. Charles V. Marsh et al.

1. PROBATE COURTS—*Limited Equity Jurisdiction.*—The Probate Court has certain limited equity jurisdiction in connection with matters which are by statute within its defined jurisdiction, but it has no general chancery jurisdiction and its limited equity jurisdiction does not divest other courts of general chancery jurisdiction of their jurisdiction in the same matters.

2. COURTS OF EQUITY—*Jurisdiction to Order an Accounting.*—A court of equity has jurisdiction to order an accounting to the end that contribution may be forced in a case where the parties complainant are entitled to it.

**Bill for an Accounting and Relief.**—Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the March term, 1901. Affirmed in part, reversed in part, and remanded. Opinion filed December 12, 1901.

**Statement.**—This litigation grows out of transactions had in relation to the following agreement, which was entered into May 14, 1891, by the appellees and the testator of appellant:

" This agreement between Charles V. Marsh, Isaac C. Marsh and Carrie Louise Marsh, witnesseth:

That whereas, they are the owners of the undivided one-half (½) of lot one (1) in the Assessor's division of lot six (6), seven (7), eight (8) and the south one-half of lot five (5) (S. ½ 5) in block thirteen (13), Fort Dearborn Addition to Chicago, said Isaac C. Marsh and Carrie Louise Marsh being the owners of the fee to said property, subject to the dower interest of said Charles V. Marsh.

And whereas, it is the decision of all the parties hereto to sell said property and to re-invest the proceeds of such sale in other real estate in the city of Chicago.

And whereas, said parties hereto have entered into a contract with John L. Bremer by which said Bremer agrees to purchase said property at the price and sum of one hundred thousand dollars ($100,000).

Now in consideration of the premises it is hereby mutually agreed by and between the parties hereto that the proceeds of said sale, after deducting costs and commissions thereof, shall be held in trust by Isaac C. Marsh, for the following purposes:

First, to be invested in such bonds or stocks as shall be approved by all of the parties in interest. Said bonds or stocks to be held by said trustee until a suitable investment in real estate in the city of Chicago, Illinois, approved by all of the parties hereto, shall be found, when said trustee shall, acting under and by the advice of all the parties hereto, make sale of such bonds or stocks as shall have been purchased as above named and shall invest all of the money so obtained and all other moneys covered by this trust, in such real estate as he may be directed to purchase by the parties hereto. The interest of the parties hereto in said real estate to be the same as that heretofore existing in the property hereinabove described, namely:

The fee to one-third ($\frac{1}{3}$) in Isaac C. Marsh, the fee to one-third ($\frac{1}{3}$) in Carrie Louise Marsh, and the fee to one-third ($\frac{1}{3}$) in Isaac C. Marsh and Carrie Louise Marsh, subject to the life estate of said Charles V. Marsh. The income resulting from time to time from the proceeds of the sale of the property herein described, also the rents and profits of real estate to be purchased, to be divided equally among the parties hereto, after all legal and proper charges against same have been paid.

When the moneys above referred to and which are the subject of the trust herein created have been re-invested as herein contemplated in Chicago real estate, then the trust herein created shall cease.

CARRIE LOUISE MARSH,
CHARLES V. MARSH,
ISAAC C. MARSH."

Appellant's testator, Isaac C. Marsh, and appellee Carrie Louise Marsh, now Doty, are the children of appellee Charles V. March. Certain property, left by the deceased wife of Charles V. and mother of Isaac C. and Carrie Louise, formed the subject-matter of the agreement. The money realized from this property, viz., $100,000, was, under the terms of the agreement, placed in the hands of Isaac C. Marsh. While he was in Europe he permitted his father, Charles V., to make use of $40,000 of this fund, which was by him invested and lost in stock speculation. After Isaac returned to this country he learned of the use to which his father, Charles V., had put this sum of $40,000. He might then have closed the stock deals into which Charles V. had put the $40,000, and not only have got back the $40,000,

but as well a certain amount of profit or winnings which had resulted from the speculation. This he did not do, but on the contrary permitted the $40,000 to remain invested in the stocks. By subsequent fluctuations of the stock market the entire $40,000 became lost. Carrie Louise Marsh, since intermarried with Doty, was not a party to these stock speculations. She knew nothing of them. In September, 1894, Isaac C. Marsh died. Appellant is the executor of his last will and trustee to carry out certain of its provisions.

Of the $100,000 which was the subject of the written agreement, $60,000 was invested in a certain note, known as the Watriss note, and in 160 shares of stock in the American Strawboard Company.

In the administration of the estate of Isaac in the Probate Court of Cook County, Carrie Louise presented a claim against the estate for the amount of her share in the funds intrusted to Isaac by the written agreement of May 14, 1891, and lost by reason of a diversion of $40,000 thereof from the purposes of the agreement. This claim was allowed to the extent of $13,000. She also obtained an order of the Probate Court by which one-half of the 160 shares of American Strawboard Company stock was turned over to her by the executor of Isaac.

Charles V. Marsh, the father of Isaac and Carrie Louise, and the person through whom the $40,000 was diverted to stock speculation and lost, also petitioned the Probate Court for an order upon the executor of Isaac to pay over to Charles V. his share of the income derived from the Watriss note. The executor replied to the petition, admitting that it held the Watriss note, which represented $60,000 of the original $100,000 intrusted to Isaac under the agreement of May 14, 1891. But it set up the fact of the loss of the $40,000, through use of it in stock speculation by Charles V., the petitioner, as a reason why the petition should not be allowed. The petition was denied and dismissed by the Probate Court " for want of equity."

The executor of Isaac C. Marsh has accounted to Carrie

Louise Doty for the income upon a one-half interest in the Watriss note, and has turned over to her one-half of the shares of stock in the American Strawboard Company. Mrs. Doty has in turn paid over to Charles V. Marsh one-third of the amounts received by her as income upon her share of the Watriss note, such payments having been made upon the supposed dower interest of Charles V. in the property which had in part been invested in the Watriss note.

The appellant, executor and trustee of the last will of Isaac C. Marsh, filed its bill of complaint in this suit, by which relief is sought as against Charles V. Marsh and Carrie Louise Marsh Doty.

The bill prays that the $50,000 Watriss note and the Strawboard stock, both that transferred to Mrs. Doty and that in the hands of complainant, be declared to be assets of a trust created by the written agreement of May 14, 1891, and that complainant be declared to be entitled to the proceeds and control thereof; that all the interest of Charles V. Marsh in said note and stocks, and all income and proceeds thereof, be declared subject to an equitable lien for the repayment of the aforesaid losses; for an accounting to Charles V. Marsh, and that complainant be allowed to apply upon the amount which should be found due from said Charles V. Marsh, all income which it has or shall collect under the alleged trust agreement, out of the trust assets, and which would otherwise go to said Charles V. Marsh, on the account to be taken; and that all amounts which Mrs. Doty had collected, or should collect, out of the income of said assets, and which would otherwise go to said Charles V. Marsh, be applied upon said accounting, as a credit upon the liability of Charles V. Marsh to complainant, and upon the claim allowed in favor of Mrs. Doty against said estate. That said eighty shares of Strawboard stock transferred to Mrs. Doty be re-transferred to complainant.

The cause went to final hearing on bill, answer and replication, and the chancellor dismissed the bill for want of equity.

A cross-bill filed by Charles V. Marsh praying for a decree that the Trust Company, as executor and trustee, pay him one-third of the income of the Watriss note and the Strawboard stock and of the $40,000 lost, was withdrawn and dismissed without prejudice.

The answer of Charles V. Marsh to the original bill denied that he had lost or failed to properly account for the moneys in question, and denied that the Probate Court had held him primarily responsible therefor, and averred that said moneys were lost by appellant's testator.

From the decree dismissing the original bill of complaint for want of equity, this appeal is prosecuted.

DUPEE, JUDAH, WILLARD & WOLF, attorneys for appellant.

JOHN M. HAMILTON and JAMES A. FULLENWIDER, attorneys for appellees.

MR. JUSTICE SEARS delivered the opinion of the court.

The question of controlling importance in this cause is as to whether the appellant, as executor of the will of Isaac C. Marsh, is entitled in equity to contribution from Charles V. Marsh upon the amount paid by the estate of Isaac to Carrie Louise Doty to indemnify her against loss of her share of the $40,000, which was squandered in stock speculation, and to that end is entitled to an accounting.

The evidence establishes that Isaac C. Marsh, the testator of appellant and the person to whom was intrusted the care and management of the fund of $100,000, in which he and appellees were jointly interested, turned over $40,000 of that fund to his father, Charles V. Marsh, one of the appellees, for investment; that Charles V. invested this money in stock speculation; that after Isaac C. heard of this investment and had ample opportunity to withdraw the fund therefrom without loss, he, deliberately, and with full knowledge of the facts, elected to leave the $40,000 thus invested. Its subsequent loss through fluctuations of the stock market is to be charged to him so far as Carrie Louise Doty is concerned, and so far as Charles V. Marsh is con-

cerned, the loss brought about through action of himself and Isaac is chargeable to both Isaac and Charles. Both were active in causing the loss, the one by his investment of the fund in a purpose foreign to the purposes contemplated by the written agreement of May 14, 1891, and the other by acquiescing in such investment after he had learned of it and had the opportunity afforded him to withdraw it unimpaired from such investment. As against either, Mrs. Doty, who was no party to the speculation through which a part of the fund was lost, might assert ground for relief. But she is asking for no relief. The Probate Court of Cook County has afforded her the relief in this behalf to which she was entitled. As between themselves Charles V. and Isaac C. stood as two, who, owning a fund jointly, have jointly embarked it in speculation, by which it has become lost. It is clear from the evidence that Isaac was at fault, as well as Charles. V. Mr. Jamieson, one of the stock brokers through whom the money was invested in stocks, testified as follows:

" The first time that Isaac C. Marsh came in to talk to me about this account of mine with Charles V. Marsh I don't know why he came unless to find out about his account or talk with me about it. I inferred that he was interested in that account. He told me that was his money that he put in, and he told me that he sent the money to his father to invest for him. * * * I think the next conversation I had with him was along in January. I asked him what he intended to do, if he intended to sell the stocks he purchased on the order of Mr. Marsh, which, as I remember, was either in January or February, and they were worth something like $25,000 more than he had paid for them. I told him how much profit, how much advance there was in the stocks since he had bought them, and he said ' I will leave the whole thing with my father.' * ·* * It was later on when I sold out this stock, between June 1st and June 22d, after this conversation in April or March; he seemed to regret that his money had been lost, and I asked him then, ' Have you any criticism to make of what your father has done ? ' He said, ' None whatever; ' that he did not want any complaint made or anything said about it. * * * I sent for Charles V. Marsh and I said to him, ' Now these stocks are only par-

tially paid for and there is a panic here and my advice would be to sell these stocks out; ' he again refused. Then I went to Isaac C. Marsh and spoke to him again and he did not want to sell them out."

If there was any evidence in the record tending to show that Isaac C. Marsh was of tender years, or otherwise incompetent to act for himself in the management of the fund committed to his care, or if it appeared that he was under an undue and controlling influence exerted over him by his father, a different question would be presented. But the evidence discloses that he was a man of mature years; that he had previously dealt in stocks. himself, and there is no ground for concluding that he was not capable of exercising judgment in the management and investment of this fund. . The fact that he had been selected as the one of the three jointly interested and by them chosen to have the care and custody of the fund, would indicate their confidence in his capacity. Upon this state of facts no relief should be awarded to either Charles V. or the estate of Isaac as against the other for the purpose of permitting either to escape sharing the loss sustained through their joint action.

But a different question is presented in the claim of appellant for an accounting and contribution from Charles V. because of the payment by the estate of Isaac of the full amount of the loss sustained by Mrs. Doty. .

Although Isaac and Charles V. were jointly the cause of the loss of the $40,000, yet it does not follow that the estate of Isaac, having been compelled, by order of the Probate Court, to make good to Mrs. Doty her share of the loss, may not in equity seek contribution from Charles V. We are of opinion that the authorities sustain the contention of appellant that such contribution may be enforced. 2 Perry on Trusts (4th Ed.), Secs. 848–849; Crocker v. Dillon, 133 Mass. 91.

It is unnecessary, in this connection, to consider the contentions of the learned counsel as to whether the writing of May 14, 1891, constituted Isaac C. Marsh a trustee, as contended by appellant, or a mere custodian of the fund,

without power to invest or dispose of it except by direction of all parties to the agreement, as contended by appellee of Charles V. Marsh. For in either event, as between the estate of Isaac and Charles V., the former would be entitled to relief by way of contribution.

It is contended by counsel for appellant that the judgment of the Probate Court of Cook County dismissing the petition of Charles V. Marsh for want of equity, is in effect an adjudication that the fund lost in speculation was lost through his fault and not through the joint fault of Charles V. and Isaac. We do not regard this contention as sound.

On September 1, 1895, Charles V. Marsh filed his petition in the Probate Court of Cook County, *in re* estate of Isaac C. Marsh, setting up the written agreement between him and his two children, and alleging that $50,000 of the $100,000 mentioned therein had been loaned and was represented by the Watriss note for $50,000; that that note had been in the hands of appellant as executor ever since the death of Isaac, and that it had collected one-half of the interest accruing on that note, and that it wrongfully refused to pay him his one-third of that interest, the proceeds of his dower as provided in the agreement, and also that the petitioner was entitled to one-third of any proceeds of the Strawboard stock, also held by appellant, which had been purchased by money, a part of the $100,000 mentioned in the agreement, in which he had dower, and praying for an order of the Probate Court on appellant, as executor, to pay over to him the proceeds of his dower right in the note and stock collected.

Appellant answered the petition, admitting possession of the note and stock and collection of interest and praying a set-off against Marsh's petition, because of the loss of money by him, as set up in the bill of complaint in this case.

On April 16, 1897, appellant filed in the Probate Court its cross-petition, setting up the grounds for relief substantially as set out in the bill of complaint here, and as set up by its answer to Charles V. Marsh's petition. By this cross-petition appellant prayed " that an order be entered deny-

ing the petition of said Charles V. Marsh for want of equity, and finding and holding and adjudging that the said Charles V. Marsh is the person primarily liable for the losses aforesaid, and that the undersigned is entitled to the rights of recoupment and subrogation, etc., and giving the undersigned such other and further relief in the premises as to the court may seem meet."

On June 8, 1897, the Probate Court entered an order as follows:

"This day came Charles V. Marsh and also came The Northern Trust Company, executor of the last will and testament of Isaac Clarence Marsh, deceased, by their respective attorneys; and this cause coming on to be heard upon the further hearing of the petition of one Charles V. Marsh, the cross-petition of said executor, and the demurrer of Charles V. Marsh thereto, on hearing had, it is ordered by the court that the original petition of said Charles V. Marsh be and the same is hereby dismissed for want of equity. And on motion of said executor it is ordered that it have leave to withdraw its cross-petition heretofore filed herein. And leave is given to Charles V. Marsh to withdraw his demurrer heretofore filed herein. And the rule heretofore entered herein on Charles V. Marsh and Carrie Louise Doty to answer the cross-petition of said executor is discharged."

These various proceedings were not had upon a claim filed in the Probate Court as a claim against the estate of the deceased, but upon the original petition, which sought to have certain moneys, collected by the appellant upon property owned jointly by the estate and petitioner and another, turned over in part to the petitioner. And in the same proceeding relief was sought by appellant, through its cross-petition, of very much the same nature as the relief now sought through a court of equity. No order appears in the Probate Court allowing or disallowing a claim of Charles V. Marsh against the estate. If the prayer of the petition could have been granted by the court the order would not have been one allowing a claim against the estate, to be paid as of any class in due course of administration, but an order to turn over to the petitioner certain property held by the appellant, not as property of the decedent, but as property of the petitioner.

The order is, in effect, that this prayer for relief be denied
and the petition be dismissed.   Upon the cross-petition no
order whatever is entered, for it was withdrawn.

No question is now presented as to the right of Carrie
Louise Doty to be indemnified from loss by reason of the
mismanagement of the $40,000.   The only question pre-
sented in the case now under consideration is as to the
right of the executor to be indemnified to the extent of the
interest of the estate of Isaac C. Marsh.   As to this ques-
tion we can not regard the judgment of the Probate Court
in dismissing the petition of Charles V. Marsh as constitut-
ing *res adjudicata.*   In this behalf it is not necessary to
determine whether the agreement of May 14, 1891, created
a trust within the meaning of the sixth division of section
70, chapter 3, Revised Statutes, in relation to the admin-
istration of estates.   If this agreement could be treated as
creating a trust within the meaning of that provision of
the statute, yet, as a matter of fact, the proceedings and
adjudication of the Probate Court are not had upon a claim
of Charles V. Marsh under this provision.   If the Probate
Court could have entertained jurisdiction to adjust all the
equities between these three persons, growing out of their
agreement of May 14, 1891, and the loss of $40,000, upon a
claim filed against the estate by which it was sought to
have the funds held by the executor declared a trust fund,
within the act regulating administration of estates, yet no
such claim appears to have been filed, and hence no such
ground for jurisdiction arose.   There is no doubt but that
the Probate Court has certain limited equity jurisdiction
in connection with matters which are by statute within its
defined jurisdiction; but it is equally certain that it has not
general chancery jurisdiction.   We are of opinion, there-
fore, that the judgment of the Probate Court dismissing
the petition of Charles V. Marsh can not be treated as a
previous adjudication by a court of competent jurisdiction
to the effect that the estate of Isaac C. Marsh is in equity
entitled to be indemnified by Charles V. Marsh for the
entire amount of the loss of the $40,000 in question.

It is contended by counsel for appellees that the right of the appellant against Charles V. Marsh, if it has any, may be asserted at law, and hence that the bill was properly dismissed. But the bill alleges that Charles V. Marsh is insolvent, and it appears from the allegations of the bill that there will be due to Charles V. from time to time amounts accruing as income upon the Watriss note, and perhaps as well, future earnings of the Strawboard stock.

It also appears from the allegations of the bill that appellant has been compelled by judgment of the Probate Court to pay to Mrs. Doty the full amount of a liability for which appellant and Charles V. Marsh were jointly answerable.

We are of opinion that this state of facts affords good ground for the intervention of a court of equity. It can not be doubted but that a court of equity has jurisdiction to order an accounting to the end that contribution may be enforced in a case where the complainant is entitled to contribution. If the Probate Court might dispose of the interest of Charles V. in the Watriss note and the Strawboard stock, by offsetting it against the claims of the estate for contribution, yet that would not preclude the jurisdiction of a court of equity to adjust these equities, and to that end to take an accounting. The limited equity jurisdiction of the Probate Court does not divest the court of general chancery jurisdiction of its jurisdiction in the same matters.

The Probate Court has exercised jurisdiction only as yet to the extent of denying Charles V. Marsh's petition for an order to turn over to him certain moneys held by the executor.

Upon an accounting in this cause equitable adjustment may be had under appropriate allegations, if such are added to the bill of complaint, in relation to sums received back by Charles V. Marsh from the stock brokers, if any sums were by him received, out of the $40,000 invested in stock operations, and as well in relation to the amounts which may become due to him upon the Watriss note and the Strawboard stock, which should in equity be applied to con-

tribute his half of the sum recovered by Mrs. Doty against the estate of Isaac because of the loss of the $40,000. So far as Mrs. Doty is concerned, no share of the loss thus incurred through her father and brother, is in equity to be imposed upon her. Nor should she be compelled to pay to appellant, or allow it credit for, any sum heretofore received by her as her share of the income of the Watriss note or the Strawboard stock. The fact that she received such sums subject to a right in them of Charles V., and has settled with him therefor, does not, in our opinion, warrant relief as against her. She owns the one-half of the note and the eighty shares of Strawboard stock, subject to a right of Charles V. in the same. This bill seeks by a sort of equitable garnishment to reach that interest of Charles V. in Mrs. Doty's income, and subject it to the right of appellant to a contribution from Charles V. But so far as appears, the right of Charles V. in the one-half of the Watriss note and Strawboard stock held by the estate will be ample to satisfy such claim to contribution. Therefore there is no reason why Mrs. Doty should be kept an unwilling and unnecessary party to this litigation. No right to relief as against her appears.

In so far as the decree of the Circuit Court has dismissed the bill of complaint as to Carrie Louise Doty, it is affirmed, and in so far as it has dismissed the bill as to Charles V. Marsh, it is reversed and the cause is remanded. Affirmed in part and reversed in part, and remanded.