JOHN H. MEREDITH, SAMUEL MEREDITH and JOSEPH P. MEREDITH *v.* NELSON MEREDITH, J. ELLEN LYNCH, VERNON SIMPSON, LENA H. DEPUTY, LYDIA M. CAIN, CHARLES HALL, SADIE HOLLEGER, NAOLA MEREDITH, and D. BENIAH THARP.

36

(*November* 17, 1931.)

PENNEWILL, C. J., RICE and RODNEY, J. J., sitting.

*John B. Hutton* for the appellants.

*George M. Fisher* for the executor, D. Beniah Tharp.

*Charles Terry* for Sadie Holleger, the daughter of Mrs. Mills, and Lena H. Deputy and Charles Hall, grandchildren of Mrs. Mills.

*Earle D. Willey* for Nelson Meredith, J. Ellen Lynch, Vernon Simpson, Lydia M. Cain and Naola Meredith.

RICE, J., delivering the opinion of the Court:

This case comes to this Court on appeal from the decree and order of the Register of Wills allowing the probate of the will of Mrs. Simpson in its entirety.

The will as originally executed was a valid will in all respects.

The question presented is, whether the cancellation of the words in the fifth item, under the circumstances, operated as a revocation of that item of the will.

*Section* 3250, *Code* 1915, provides:

"A last will and testament, or any clause thereof, shall not be altered, or revoked, except by cancelling by the testator, or in his presence and by his express direction, or by a valid last will and testament, or by a writing signed by the testator, or by some person subscribing the testator's name in his presence and by his express direction, and attested and subscribed in his presence by two or more credible witnesses; but this clause shall not preclude nor extend to an implied revocation."

The cancellation of the fifth item could operate as a revocation of that portion of the will only if the requirements of the statute had been complied with. The statute provides that the act of cancelling must be done by the

testator or in his presence and by his express direction.
Was the canceling of the fifth item an act of the deceased?
We believe it is reasonable to presume, under the facts in
this case, that the cancelling of the words in the fifth item
was done by the testatrix. There is a total absence of any
evidence tending to show that the cancellations were made
by any other person or to cast suspicion in that way upon
any person. The testatrix executed the will in the presence
of Mr. Tharp, and in the presence of witnesses to the will
it was given to Mr. Tharp who placed it in an envelope
which he sealed. It remained in his possession for about
ten years at which time Mrs. Simpson obtained the envelope
containing the will from him stating at the time that she
"was in a notion" to make some changes in her will. She
returned the same to Mr. Tharp a few days later in a sealed
envelope and it remained in his care until after her death.
 Under such circumstances it may be said that
the paper was always under her control and practically
in her possession, notwithstanding that the sealed envelope
was actually in the care of Mr. Tharp. Mr. Tharp testified
he did not open the first envelope after it was sealed in the
presence of Mrs. Simpson and he did not open the sealed
envelope in which she returned the will to him until after
her death. The truthfulness of Mr. Tharp's testimony has
not been questioned. We believe that there can be no doubt
that the cancellation of the words in the fifth item was done
by the testatrix herself during the period she had the will
in her own physical possession and out of the care of Mr.
Tharp. Did the drawing of pencil lines through each word
of the fifth item constitute a cancelling within the meaning
of the statute? The word "cancelling" is not a technical
one and, therefore, the Legislature must be presumed to
have used it in its ordinary and commonly understood
sense and any act done, which in common understanding
is regarded as a cancellation when done to any other instru-
ment must be considered as a cancellation when done to a

will or any part thereof. Cancelling means to cross out or mark out. Therefore, a marking out to effect a cancellation of a will or part of a will must be an act done to the will itself. It is not necessary that the crossing out should entirely obliterate or even make illegible the words stricken out. In fact, the word "cancelling" rather implies a preservation of that which has been cancelled or stricken out.

■ ■ The statute in this state does not provide any particular manner to be followed in cancelling a will or any clause thereof. It only provides that a last will and testament or any clause thereof shall not be altered or revoked except by cancelling by the testator, etc., etc., therefore, the method and means of cancellation are left to the judgment of the testator. It may be done by whatever method the testator may adopt or means he may employ, but whatever means he may use to cancel the will either in whole or in part, it would not be legally effective unless the act of cancelling should be done with the intention on the part of the testator to revoke that which is stricken out, for it is the law that there must not only be a physical act of cancelling but the act must be done with the intention on the part of the testator to revoke and make null and void that which has been cancelled. In other words, there must be a concurrence of the act of cancelling and the intent to revoke.

In *Woodfill v. Patton,* 76 *Ind.* 575, 40 *Am. Rep.* 269, it is stated "In order that there should be a valid revocation of a will there must be the concurrence of two things, the intention to revoke, and the act manifesting the intention."

In the present case a lead pencil was used to cancel the words in the fifth item.

In England, it seems to be the rule in such cases that from the very nature of the act, when a pencil is used, the cancellation is *prima facie* deliberative and not final, but that it was intended to be a final act of revocation may be established by satisfactory evidence.

In this country, the general rule appears to be that the cancelling may be done by pencil or pen with equal legal effect as an act of revocation. *Hilyard v. Wood,* 71 *N. J. Eq.* 214, 63 *A.* 7, 9; *McIntyre v. McIntyre,* 120 *Ga.* 67, 47 *S. E.* 501, 102 *Am. St. Rep.* 71, 1 *Ann. Cas.* 606; *Estate of Tomlinson,* 133 *Pa.* 245, 19 *A.* 482, 19 *Am. St. Rep.* 637; *Woodfill v. Patton,* 76 *Ind.* 575, 40 *Am. Rep.* 269; *Townshend v. Howard,* 86 *Me.* 285, 29 *A.* 1077.

In *Hilyard v. Wood, supra,* the Court said "a clear and distinct erasure made with a pencil is entitled to the same *prima facie* consideration as if made with a pen and ink."

However, it is not necessary for the Court in this case to decide in favor of either rule for the reason that while a pencil was used by the testatrix as a means of making the cancellation, in our opinion, it clearly and satisfactorily appears from the evidence that the testatrix cancelled the words in the fifth item with the intention that the act should operate as a revocation of that part of her will.

When the testatrix secured the envelope containing the will from Mr. Tharp, she stated at the time that she had a notion to make a change in her will. While the will was in her possession she did not draw through the item as a whole, nor did she only draw one line through each word in the item, but she drew several lines through each word separately and when she returned the paper to Mr. Tharp for safekeeping, she returned it in an envelope already sealed.

In our opinion, the facts of drawing at least two lines through each word and the return of the will to Mr. Tharp in an envelope re-sealed are of great significance and entitled to great weight in determining the intention of the testatrix when considered in connection with the statement made by her when she secured the will from Mr. Tharp. In this connection, when it is considered that there was absolutely no evidence introduced at the hearing before the Register of Wills to show that the act of cancelling the

words contained in the fifth item was merely a deliberative act on her part, and performed with the intention of later executing a codicil or a new will, it must be regarded as a final act of revocation by the testatrix.

It must be remembered that in the case now before the Court there was a cancellation of the words comprising the fifth item, only, and there was no attempt on the part of the testatrix to make any other changes or alterations in her will, as executed, by interlineations or writing on the face of it. The result of the cancellation was not to make a new will in any respect, it was only to take out of the will so much thereof as had been cancelled. It had no effect on any other item except such as might result to the residuary clause. While the cancelling of item five did have the effect of increasing that part of the estate disposed of by the residuary clause, yet when she executed her will, it was her intention that such part of her estate as was not otherwise specifically devised or bequeathed should go to her residuary legatees and devisees; and when she revoked the fifth item, it is reasonable to believe that no longer having specifically devised the property which was the subject of the fifth item, then it was her intention that such property should take its place with that other part of her property of which disposition had been made in the residuary clause, unless this should be contradictory to the declared purpose of the testatrix as found in other parts of the will. There is nothing in Mrs. Simpson's will to show a contradictory purpose with respect to the property originally devised in the fifth item.

While the effect of the cancellation in the present case was to make a change in the will to the extent of increasing her residuary estate, yet this may be regarded as an incident to the cancellation and not such a change in the original will as could be made only by a codicil or a new will.

In *Thayer v. Wellington,* 9 *Allen* (*Mass.*) 283, 85 *Am. Dec.* 753, the Court said "We take the rule to be that a general residuary clause passes all the estate of the testator not otherwise disposed of, unless it is manifestly contradictory to the declared purpose of the testator, as found in other parts of the will."

And in *Brown v. Brown,* 91 *S. C.* 101, 74 *S. E.* 135, 136, it is stated "the increase of the residuary estate which may result from the obliteration is not a new testamentary disposition, but a mere incidental consequence resulting from the exercise of the power conferred on the testator by the statute."

For the reasons stated, it is the opinion of this Court that the decree and order of the Register of Wills in and for Kent County should be reversed to the extent that item five was probated as a part of the will.

It is, therefore, ordered and decreed by this Court that the will be probated with the fifth item omitted.