## JOHN L. DAVIS *vs.* TIMOTHY CALLAHAN.

### Androscoggin.    Opinion June 22, 1886.

| 78 313 |
| 98 503 |

*Will. Devise. Life-estate. Residuary devisee. Deed. Name of grantor.*

When a party is the devisee of the interest in real estate specifically devised as a life-estate, that fact will not preclude such party from taking the remaining interest in the estate in the character of a residuary devisee.

By one clause of a will the testator devised unto his wife, for and during the term of her natural life, certain real estate. The reversionary interest therein was not specifically devised. By the general residuary clause he devised unto his wife all the rest, residue and remainder of his estate, real, personal and mixed, wherever found and however situate. *Held*, that by the terms of the will and the intention of the testator as gathered from the whole instrument, the wife took an estate in fee in the real estate thus devised.

Where a party has in fact signed and executed a deed by a name which he has seen fit to adopt, although not the correct name of such party, he will nevertheless be estopped from taking advantage of it.

Such act will be binding not only on such party, but on all others in privity with him, and whose rights are not paramount thereto.

ON REPORT.

Real action for the possession of a certain house and lot on Lincoln street, Lewiston. By the terms of the report the law court were authorized to draw such inferences of fact as a jury might, and render such judgment as the legal rights of the parties required.

The following is a copy of the will of Daniel Callahan referred to in the opinion:

"I, Daniel Coughalane, of Lewiston, in the county of Androscoggin and state of Maine, being weak in body, but of a sound and perfect mind and memory, do make, publish and declare this my last will and testament, and herein dispose of all my worldly estate, in manner following, to wit:

"First. I order and direct my executor herein named to pay all my just debts and funeral charges as soon as may be after my decease.

"Second. I give and bequeath to my wife, Honnora Coughalane, all my household furniture, all the provisions I may have on hand at the time of my decease; fourteen hundred dollars now deposited or in one of the Boston savings banks, and all interest thereon accrued or that may have accrued at the time of my decease.

"Third. I give and devise to my said wife for and during the term of her natural life, the lot and house and all buildings on the lot on Lincoln street in Lewiston, meaning the lot and house by me occupied at the date of this instrument, and next east of the old Catholic church on said street, to have and to hold the same to her and her assigns, with all of the appurtenances thereto belonging, for and during the term aforesaid.

"Fourth. I give, devise and bequeath to my said wife all the rest, residue and remainder of my estate, real and personal and mixed, wherever found and however situate, and I do hereby appoint John McGillicuddy, of Lewiston, sole executor of this my last will and testament, hereby revoking all former wills by me made, meaning to revoke the will by me signed and bearing date August the 21st, A. D. 1867." Duly signed and executed.

*Savage and Oakes,* and *P. S. Laughton,* for the plaintiff, cited: 2 Redf. Wills, 116; 5 Pick. 528; 10 Pick. 306; 9 Allen,

297; Jarman's Rules, VII, X; Bouvier's Law Dictionary, "Residue," "Remainder."

*D. J. McGillicuddy*, for the defendant.

The only question presented in this case is whether Honora Callahan takes a fee simple or a life-estate in the demanded premises. We claim a life-estate only. The interpretation of this will is a matter for the court. The cardinal rule in its construction, stated in different language, but well understood, is to give effect to the intent of the testator if it can be done without violating any of the rules of law. Taking the whole will into consideration, what estate did Daniel Callahan intend his wife should have in the premises in question? First he gives to his wife the household furniture, etc. He then gives her the fourteen hundred dollars in the bank. He then disposes of the demanded premises, by giving his wife a life-estate therein. Then follows the ordinary residuary clause. Plaintiff claims that the wife gets an estate fee under this will,— first a life-estate under the third clause and the rest under the residuary clause.

As gathered from the terms of the will fairly considered, what estate did Daniel Callahan intend his wife to have in these premises? Did he intend to give her an estate in fee? If so, why did he not say so in the ordinary and easiest possible manner? Why should Daniel Callahan divide his estate up in this way and give it piece-meal to the same devisee? Why put such a forced and unnatural construction upon the plainly expressed provision of his will? Most certainly such was not his intention.

"A clearly expressed intention in one portion of a will is not to yield to a doubtful construction in another portion of the instrument." 1 Redfield, 407.

FOSTER, J. This case presents a "comedy of errors." The title to the demanded premises was formerly in Daniel Callahan. Both parties claim through him as the source of their title. On June 2, 1864, he made, executed and caused to be recorded, a warranty deed of the premises to one *Joehanar* Callahan— whether his wife or his daughter, is one of the questions in dispute. It is claimed by the plaintiff that the intended grantee

was *Honora* Callahan, Daniel's wife.   On the other hand, it is claimed by the defendant that the intended grantee was *Johanna* Callahan, Daniel's daughter.   But it is admitted that there was never any delivery of the deed to or for the said Johanna Callahan, the daughter.

December 15, 1864, Daniel and his wife joined in a mortgage of the premises to a third party,—the wife being named therein as "*Joehanar* Callahan, wife of the said Daniel Callahan, in her own right," and signing the mortgage by that name.

Thereafter, on June 2, 1868, Daniel died, leaving a will in which the premises are devised to his wife, "Honnora Coughalane." December 22, 1874, said Honora Callahan, by the name of *Joehanar* Callahan, conveyed the premises to the demandant by warranty deed, duly recorded.

This is the channel through which the demandant claims his title to the demanded premises.

April 8, 1881, Honora Callahan quitclaimed her interest in the premises to the defendant, and died in 1882.   June 5, 1884, Johanna Callahan, daughter of Daniel and Honora, quitclaimed her interest in the premises to the defendant.

Although the case as stated does not expressly show the fact, yet it seems to be conceded that the defendant is the son of Daniel and Honora Callahan, and he claims title to the premises both by purchase of Johanna's interest — whatever it was — and as being heir at law of Daniel after the termination of what he asserts to be a life-estate in the premises devised to Honora, instead of an estate in fee.

In other words, the defendant asserts that the wife of Daniel was not the intended grantee in the deed from Daniel to *Joehanar* Callahan of June 2, 1864, consequently she had no estate thereby to convey to the demandant, either by the name of Honora, or by the name of Joehanar,—and furthermore that she took by devise from her husband a life-estate only, and not a fee in the premises, and could convey only her interest therein, and that at her decease the estate vested in the heirs at law of Daniel, two of whom we may assume from the case and the arguments of counsel, were Timothy Callahan, the defendant, and Johanna Callahan, the daughter.

I. If we were satisfied that the wife of Daniel Callahan was the grantee in his deed of June 2, 1864, and that the same had been delivered to and accepted by her, it would not become necessary to proceed further in ascertaining the rights of the parties under the will, as they might then be settled with reference to the deed. But from the evidence before us, and from the circumstances surrounding the transaction, we are inclined to the belief that the grantor did not intend the deed for his wife, but that if he had any intention at all it was to make a deed to the daughter. This deed never received the breath of life, for there was no delivery as the case shows.

II. Whatever title the demandant has, then, must be derived through the will of Daniel Callahan. By the terms of that will, which fully comports with the other proceedings of the parties indicating a total disregard of everything pertaining to legal perspicuity, we find that the testator being of a "sound and perfect mind and memory," bequeaths to his wife, "Honnora Coughalane"—admitted to be identical with Callahan—specific items of personal property, after the payment of his debts and funeral charges; he then devises to her "for and during the term of her natural life," the demanded premises; and by the next clause he gives, devises and bequeaths unto her all the rest, residue and remainder of his estate, real, personal and mixed, wherever found and however situate.

The defendant contends that the intention of the testator is clear, and that the general residuary clause was intended for nothing more than a disposition of those portions of the estate which had not already been disposed of.

We acknowledge the rule which seems to be better established than its application to particular cases, that where the testator makes a general devise or bequest which would include the whole of his estate, and in other parts of the will makes specific dispositions, those specific dispositions are to be regarded as exceptions or qualifications out of the general disposition. Thus in *Cuthbert* v. *Lempriere*, 3 Maul. and Sel. 158, where a testator, after devising the whole of his estate to A, devises Blackacre to B, the latter devise will be read as an exception out of the first.

But there are other rules equally important in the construction of wills, and one is, that the court will, if possible, adopt such construction as will uphold all the provisions of the will. *Doe* v. *Davies*, 4 Mees. and Wel. 599. In the attainment of this object the relative order or position of the bequests or devises in the will may be disregarded, if it is possible by the transposition of them to deduce a consistent disposition from the whole will. Furthermore, there must be such a construction as to give effect to the intention of the testator as ascertained from the whole will, provided it is consistent with the rules of law. The will is to be viewed and construed as a whole. Neither is one portion to be treated as repugnant to another if it is possible for both to stand. *Muller's Estate*, 38 Penn. St. 314; *Allgood* v. *Blake*, L. R. 8 Exch. 163.

If we view the will before us in the light of these principles, we shall find that there are no legatees named other than the wife; and if it be construed as giving the wife only a life-estate, as appears by the third clause to have been at first indicated, then we do not give that force and effect to the succeeding residuary clause which by its language and position it is entitled to. Nor are there any persons named or designated as devisees of the remainder, if only a life interest is to be carved out of the testator's estate. Such a construction would not only be contrary to the express language of the residuary clause, and would uphold only a portion instead of the whole will, but would result in partial intestacy, a result which courts in this country and in England have for a long time sought to avoid unless absolutely forced upon them. It would also be contrary to the introductory words of the will by which the testator at the outset professes to dispose of all his worldly estate in the manner which he indicates. As was said in *Fogg* v. *Clark*, 1 N. H. 166, " the introductory words of the will intimating the testator's intention to dispose of his whole estate, raise a presumption that the testator by this devise intended to give a fee. Because, if only a life-estate passed by it, the remainder in fee was not disposed of by the will." It is a presumption weighing to a greater or less extent in arriving at the intention of the testator, that by the

making of a will he intends to leave no portion of his estate beyond its operation, unless by express terms he has so indicated. Therefore it is constantly held that a residuary devise, in the ordinary terms, carries with it not only the property of the testator in which no interest is devised or bequeathed in other portions of the will, but also all reversionary as well as contingent interests in property which are not otherwise disposed of by him. *Hayden* v. *Stoughton*, 5 Pick. 528 ; *Egerton* v. *Massey*, 3 C. B. (N. S.) 338 (91 E. C. L.).

Moreover, the fact that the devisee in this case is not only the devisee of the interest specifically devised to her as a life-estate, but also the general residuary devisee, will not exclude her from taking the remaining interest in the estate in the character of a residuary devisee. Jarm. on Wills, * 649.

Thus in *Williams* v. *Goodtitle*, 10 B. & Cr. 895, (21 E. C. L. 193,) Lord TENTERDEN, C. J., said : " Then it appears that there is a devise to the wife for life, then certain other devises follow ; and, lastly, there is a general residuary clause in favor of the wife. It is admitted, that if all that were in a will, the particular devise and residuary clause might well stand together, and the wife would take under the residuary clause."

Again, this same principle is clearly laid down in the case of *Doe* v. *Gilbert*, 3 Brod. & Bing. 85, (7 E. C. L. 359,) where there was a devise of specific estates, both to the heir at law and the residuary devisee ; and it was held that under the general language of the residuary clause, coupled with the intention of the testator, as disclosed by the introductory words of the will, the residuary devisee took an estate in fee, although the words of the specific devise would only have carried an estate for life. " The testator meant to dispose of his whole property," say the court, "and such in general is the intention of testators ; but that is not sufficient, unless the will contains words to carry the fee. Here, under the clause containing the devise of the real property, if that clause be taken alone, an estate for life only passes ; but the question is, whether it can be connected with the intention to dispose of the whole, expressed in the introductory clause, and with the general words, all my testamentary

estate and effects in the residuary clause, so as to pass the fee."

It is extremely difficult in the construction of wills to be governed by decisions upon other wills framed perhaps in different language. Courts will be cautious in the application of legal principles deduced from what may seem to be analogous cases, and in each case will endeavor to ascertain the meaning of the testator from the language he has used. And in the case before us, taking everything into consideration bearing upon the question, being governed by the well settled rules of law, we can come to no other conclusion than that the widow took an estate in fee in the demanded premises.

III. This being the case, she might lawfully convey the same by deed to the demandant. His deed from her, however, although executed and acknowledged by her in fact, was signed by the name of "*Joehana*" Callahan. She had in her husband's life-time, as it appears, in other transactions in reference to this same real estate, joined with him in a mortgage thereof, adopting and using the same name as in this conveyance in question. By the executing of this deed to the plaintiff, calling herself by the name which, not only on this but on other occasions she had seen fit to adopt, she would be held to be estopped as against this plaintiff from taking advantage of it. No person can avoid his own deed by which an estate has passed by reason of his own hand and his own seal in executing it.

Speaking of this doctrine in *Foster* v. *Dwinel*, 49 Maine, 48, KENT, J., says : "It is based on the great principle of right, that a man shall not be permitted to contradict what he has solemnly affirmed under his hand and seal; nor shall he deny any act done or statement made, when he cannot do so without a fraud on his part and injury to others." Herman on Estop. § 212 ; *Sinclair* v. *Jackson*, 8 Cow. 586.

Further than this, estoppels are not only binding upon parties, but upon privies ; privies in blood, as the heir ; privies in estate, as the feoffee, lessee, &c. ; privies in law, as those upon whom the law casts the estate. Co. Litt. 352, *a* ; 1 Gr. Ev. § 23 ; *Carver* v. *Jackson*, 4 Peters, 83 ; *Crane* v. *Morris*, 6 Peters, 611. They are not binding upon strangers, nor upon those claim-

ing by title paramount to the deed or instrument creating the estoppel. But inasmuch as the widow, as devisee in her husband's will, took an estate in fee and was capable of conveying the same, as in fact she did by deed of warranty, this defendant can not be said to be a stranger, nor claiming by title paramount to hers so as to avail him in this action. He will be held to be estopped equally as would the grantor herself.

*Judgment for demandant.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and HASKELL, JJ., concurred.