ELIZABETH R. GIBERSON, Admx., of JAMES GIBERSON,

*vs.*

BANGOR & AROOSTOOK RAILROAD COMPANY.

Aroostook.    Opinion November 28, 1896.

*Negligence.    Railroad.*

A person about to pass over a railroad crossing at grade must be himself apprehensive of the danger of collision with passing trains, and be intent and alert to avoid the danger. He must not wait to be apprised of the danger by warnings from the railroad employees, but must look and listen for himself. If it does not affirmatively appear that he was thus apprehensive and alert, he cannot recover for injuries received from the collision.

In this case, *held;* that it does not appear that the plaintiff's intestate, the person injured, made any effort to ascertain whether a train was approaching, or took any thought or care about the matter;—had he done so, he could have avoided the collision.

VOL. LXXXIX.    22

ON MOTION BY DEFENDANT.

This was an action brought by the plaintiff, as administratrix of the estate of James Giberson, of Mars Hill, County of Aroostook, deceased, to recover damages sustained by the said Giberson in his lifetime, by reason of injuries received by him on account of being struck and run over by a train belonging to the defendant company at Mars Hill.

The material acts of negligence alleged by the plaintiff in her declaration are as follows: " . . . said James Giberson then and there after said train had passed, and while said crossing was clear and unobstructed as aforesaid, and having no reason to apprehend the passing of another train, or section of a train, immediately after one had just passed, attempted to pass over said crossing, and did, then and there, slowly and carefully drive upon the same. But the said defendant corporation by its servants and agents, and with its locomotive engine aforesaid, carelessly and negligently and without warning or safeguard of any kind, 'kicked back' said train of nine cars along said track and over said crossing with great force and violence, the said locomotive engine being then and there disconnected from said cars, and the said James Giberson being then and there lawfully upon said highway, and going over said railroad track at the crossing aforesaid; and the said train of nine cars then and there under the direction, management and control of said defendant corporation, was then and there, by said locomotive engine, which was then and there under the management, direction and control of the defendant corporation by its servants and agents as aforesaid, carelessly and negligently propelled, hurled, projected and driven over said railroad and across said highway at the crossing aforesaid with great velocity and violence, directly against and upon the sled upon which the said James Giberson was then and there lawfully riding and against and upon the said James Giberson, . . . .

"And the plaintiff avers that after said locomotive engine and train of nine cars had passed over said crossing as aforesaid, and while the said James Giberson was attempting to pass along said highway, and over said track as aforesaid, there were none of the

servants or agents of said corporation at said crossing ; that there was no flagman, signal or safeguard of any kind to show that said crossing was not then and there safe ; and that before and when said cars were as aforesaid driven, forced or 'kicked back' along said track, and over and upon the said James Giberson, as aforesaid, there was no warning by whistle or bell, and there was only one brakeman on all of said nine cars."

. The jury returned a verdict in favor of the plaintiff for one thousand dollars, and the defendant filed a motion for a new trial.

The case appears in the opinion.

*V. B. Wilson and G. A. Gorham, Jr., and R. W. Shaw*, for plaintiff.

It is the duty of those in charge of trains to keep a sharp lookout in order to avoid collisions with teams at crossings ; it does not rest upon the traveler alone. *Purinton* v. *Me. Cent. R. R. Co.*, 78 Maine, 569; *Garland* v. *Me. Cent. R. R. Co.*, 85 Maine, 521.

It is a matter of common knowledge that a practice to back and switch cars over a highway-crossing is peculiarly dangerous and therefore creates a duty of unusual care on the part of the company. There should be abundant warning not only by the usual signals of bell and whistle, but there should be a flagman near the track, or a watchman on the nearest approaching car, to warn travelers who are near. *Smith* v. *Me. Cent. R. R. Co.*, 87 Maine, p. 349, and cases therein cited.

When the evidence is conflicting on the point upon which the case turned, the verdict will not be set aside unless it is clearly against the weight of evidence. *Purinton* v. *Me. Cent. R. R. Co.*, supra.

And we claim that at a crossing, where the view of the track from the highway and the highway from the track is obstructed, that a watchman on the approaching car, even if one were there, does not supply the place of a flagman at the crossing when cars are to be backed or switched over the highway. See *Linfield* v. *Old Colony R. R. Co.*, 10 Cush. 562.

Direct proof that the deceased both looked and listened before going upon the crossing is not necessary, but the jury are warranted in finding from the circumstances, if the circumstances are sufficient, that the deceased both looked and listened. *Chisholm* v. *State of N. Y.*, 141 N. Y. p. 249, (Sickels, Vol. 96); *Romeo* v. *Boston & Maine R. R. Co.*, 87 Maine, p. 549; *State* v. *Boston & Maine R. R. Co.*, 80 Maine, 430; *Hooper* v. *Boston & Maine R. R. Co.*, 81 Maine, 260; *Kellogg* v. *N. Y. C. & H. River R. R. Co.*, 79 N. Y. Court of Appeals, 72, (Sickels, Vol. 34); *Galvin* v. *Mayor etc., of the City of New York*, 112 N. Y. Rep. Court of Appeals, 223, (Sickels, Vol. 67.)

The law does not require the traveler to stop for the purpose of listening; if with a team, it does not require that he should get out of the vehicle in which he is riding, leave his team and go to the track for the purpose of looking, or to rise up in his vehicle and go upon the track in a standing position to enable him to obtain a better view of the track. This would be requiring extraordinary care such as is rarely, if ever, exercised by the most prudent. *Davis* v. *N. Y. C. & H. River R. R. Co.*, 47 N. Y. Court of Appeals, p. 402, (Sickels, Vol. 2).

In *Kellogg* v. *New York Central & Hudson River R. R. Co.*, before cited, the court say: "There were buildings, trees, shrubbery, the embankment on the south side of the road, and upon that a board fence. To what extent he could have seen this rapidly approaching train if he had looked at various points in the highway, is uncertain." . . . "Under all the circumstances surrounding the accident we think it was for the jury to determine whether he exercised that care which the law required of him. He could have probably avoided the accident by stopping before he passed upon· the track, but that is a degree of care not usual even with very prudent persons."

And in the same case the court also say: "It is a well-known fact that sounds are frequently shut off by obstructions; the same obstacles that obstruct the eye-sight will prevent sounds from being heard, and that the condition of the atmosphere will frequently prevent sounds from being carried in one direction which may be

clearly heard in another is well-known. Whether under such circumstances by the exercise of ordinary prudence he did or could have heard, was a question for the jury."

While negligence on the part of the defendant company is no excuse for negligence on the part of the traveler, yet at a crossing, where it is necessary for them to use more than ordinary care in kicking a train back over the highway, and no warning of any kind was given and the train had passed over the track within five minutes of the time of its returning, it would be some evidence that no train was approaching.

While a neglect of the company to perform its duties does not excuse the traveler in a neglect of the duties and degree of care which the law imposes on him, still, in making his calculation for crossing a railroad track safely, he is often justified in placing some reliance on a supposition that the company will perform the obligation resting on it, where there is no indication that it will do the contrary. Cases supra.

A remote fault in one party does not, of course, dispense with care in the other; it may make it even more necessary and important if thereby a calamitous injury can be avoided, or an unavoidable calamity essentially mitigated.

Common justice and common humanity, to say nothing of law, demand this, and it is no answer for the neglect of it to say that the complainant was first in the wrong. *Isbell* v. *N. Y. & New Haven R. R. Co.*, 27 Conn. 404, and cases cited; *State* v. *Railroad*, 52 N. H. 554, and cases cited.

*F. H. Appleton and H. R. Chaplin, F. A. and D. A. Powers, and L. C. Stearns*, for defendant.

The omission of a flagman is not a legal act of negligence, for the law does not require a flagman to be maintained at a highway-crossing in the compact part of a town, unless the train is run across said crossing at a speed greater than six miles an hour,—R. S., c. 51, § 75, and amendments thereto,—or unless upon the request of the municipal officers of the town, the railroad commissioners should order a flagman to be stationed at the crossing and

the company should fail to comply with such order. In this case no request was ever made or order ever given to maintain a flagman—and the speed of the train did not exceed the statutory limit of six miles an hour. The company was guilty of no statutory negligence, then, in providing no flagman at the crossing, nor can they be said to be guilty of any negligence at common law. They carefully guarded the front of the backing train, by stationing lookouts on the platform and in the monitor, and the case shows that these men, from their very positions, were able to discover and seasonably warn travelers upon the highway of the approach of the train, had any heed been given to their warnings.

Ordinarily, the question of due care and negligence is for the jury. This is necessarily so when the facts bearing upon these questions are in dispute or even when the facts are undisputed and intelligent and fair-minded men may reasonably differ in their conclusions; but it is not true where the facts are undisputed and there is no evidence, or the evidence is too slight and trifling to be considered by the jury. *Romeo* v. *B. & M. R. R.*, 87 Maine, 540; *Lasky* v. *C. P. Ry. Co.*, 83 Maine, 461.

This case certainly falls within the latter category. There is no evidence that he listened and thus fulfilled one of the duties required of him by law. He has not discharged the burden resting upon him in this regard and hence cannot recover.

Counsel cited: *Wheelwright* v. *B. & A. R. R.*, 135 Mass. 229; *Lesan* v. *M. C. R. R. Co.*, 77 Maine, 87; *Hooper* v. *B. & M. R. R.*, 81 Maine, 260; *State* v. *M. C. R. R.*, 76 Maine, 366; *Smith* v. *M. C. R. R.*, 82 Maine, 342; *Chase* v. *M. C. R. R.*, 78 Maine, 353; *Allen* v. *M. C. R. R.*, 82 Maine, 117; *Baxter* v. *Troy & Boston R. R. Co.*, 41 N. Y., 506.

In *Burke* v. *New York C. & H. R. R. Co.*, 25 New York Supp. 1009, 73 Hun, 32, it was held, "where a person is killed at a crossing and the evidence shows that an approaching train could have been seen three hundred feet away, when he was thirty-three feet from the track, he will be presumed to be guilty of contributory negligence in failing to look."

In *Gardiner* v. *Detroit L. & N. R. Co.*, 97 Mich. 240, (56 N.

W. Rep. 603) it was held, "where, if the plaintiff had looked, when within five feet of the crossing, his view of the railroad track would have been unobstructed for two hundred and fifty feet and he must have seen the train approaching, it is evident that he either did not look or that he saw the train and carelessly attempted to cross in front of it; and in either case was guilty of such contributory negligence as would authorize the court to direct a verdict for the defendant.

*Mr. L. C. Stearns*, argued orally for the defendant.

SITTING: PETERS, C. J., EMERY, FOSTER, WHITEHOUSE, WIS-WELL, STROUT, JJ.

EMERY, J.   Grade crossings of railroads with common roads are places of obvious peril to the traveler upon the common road. The exigencies of modern railroad traffic require the running of frequent trains of heavy cars at considerable speed.   If every railroad train or locomotive was to stop or even materially reduce its speed at every country road-crossing, the great benefit of railroads to the public, viz., quickness and economy of transportation, would be greatly lessened if not destroyed.

The traveler upon the common road is not seriously inconvenienced by the railroad crossings.   Whether on foot or driving horses he can easily stop or slacken his pace at any point, and easily renew his progress without appreciable loss of time or power. If he be alert and watchful for the passing train, he can usually check his own speed quickly enough to avoid a collision.

The obvious peril of collision at such crossings requires that the traveler upon the common road, when approaching a railroad crossing, should exercise a degree of care commensurate with the peril. He should bear in mind that he is approaching a railroad crossing and that a train or locomotive may also at the same time be approaching the same crossing at great speed.   He should never assume that the railroad track or crossing is clear.   He should apprehend the danger, and use every reasonable precaution to ascertain surely whether a train or locomotive is near.   He should,

when near or at the crossing, look and listen,—not simply with physical eyes and ears but with alert and intent mind,—that he may actually see or hear if a train or locomotive be approaching. He should not venture upon the track or crossing until it is made reasonably plain that he can go over without risk of collision.

Persons operating the railroad upon their part are required to give suitable signals or warnings as their trains approach crossings over common roads, and their omission to do so may subject them to penalties and damages;—but the traveler upon the common road must not trust his safety entirely to the care and thoughtfulness of the railroad men. He must still exercise due care upon his own part,—must still use his own faculties to apprehend and avoid the danger. If he fail to do so and thereby plunge into a danger that he could have avoided by such care and precaution, he has no legal redress against others who were only negligent with himself. In all actions for negligence like this, the plaintiff must affirmatively prove his own freedom from contributory negligence. The mere collision is prima facie evidence of the plaintiff's want of due care.

The foregoing is only an iteration of what has been repeatedly stated in varying language, in several well considered opinions of this court, to be the law of this State both upon reason and authority. *Chase* v. *Railroad*, 78 Maine, 346; *Allen* v. *Railroad*, 82 Maine, 111; *Smith* v. *Railroad*, 87 Maine, 339; *Romeo* v. *Railroad*, 87 Maine, 540. The opinions of the court in *Hooper* v. *Railroad*, 81 Maine, 260, and in *York* v. *Railroad*, 84 Maine, 117, do not modify the above statement of the traveler's duty. In those cases the railroad men were guilty of something more than a mere omission to give warnings. They were not merely silent, thus inciting the traveler to more exertion to see or hear. By their conduct they broke silence and affirmatively assured the traveler that no train was then approaching. They caused him to take no further care.

It remains to apply these principles to the undisputed facts in the case now before us:—On February 27, 1895, the defendant company was operating its newly constructed and unballasted railroad through the town of Mars Hill in Aroostook County. In

that town, at that time, was a grade crossing where the railroad crossed a common road at a somewhat acute angle, the railroad running northwest and southeast and the common road running northeast and southwest. From the crossing southeasterly to the Mars Hill railroad station the distance was nearly 1200 feet with a slightly descending grade. The common road to the northeast of the crossing for some distance was nearly level, but at about twenty-five feet distant from the crossing there was a rise of a few feet in grade to the crossing itself.

On the morning of the day named, a train of ten loaded freight cars with a saloon car in the rear passed southeasterly down the track past this crossing to the Mars Hill station nearly 1200 feet below. After a very brief stop there this train was backed up toward and past this crossing again in order to get out some other freight cars from a siding. There was the usual conflict of evidence as to the speed of the train in backing up, and as to whether the locomotive whistle or bell was sounded as a warning.

About the same time, the plaintiff's intestate, Mr. Giberson, who knew this crossing, was driving a pair of horses in a sled down the common road from the northeast toward the crossing. Riding on the sled with him were two other men sitting opposite each other on the side boards just behind Mr. Giberson, who was sitting on the cross-seat. He trotted his horses to about the foot of the rise near the crossing where he slowed down to a walk, and kept on at that pace without stopping until the horses came upon the crossing. At this moment the saloon car, now the forward car of the backing train, also reached the crossing. The horses then sprang ahead and to the right, away from the car, but too late; and the car struck the sled, inflicting severe injuries upon Mr. Giberson from which he died on the same day.

According to the legal principles, now so often stated that they must be familiar, it was incumbent on the plaintiff to affirmatively prove that her intestate, Mr. Giberson, when approaching this crossing, was in the exercise of a due degree of care commensurate with the well-known dangers likely to exist at a railroad crossing. It is urged that he was excused from not seeing the approaching train

by reason of buildings and high banks of snow obstructing the vision. It does not appear that he made any effort to surmount those obstacles even by rising from his seat and standing up to look over or between them. It is urged, again, that he was excused from not hearing the train for the reason that no whistle, or bell, or other alarm was sounded. It does not appear that he listened for any sounds of a train. The mere rumbling of the eleven cars, ten of .them loaded, on the unballasted track on that still winter morning made sufficient concussion and noise to shake the windows in a building some two hundred feet above the crossing, and to arouse the attention of the occupant of the building and bring him out to see the train. The plaintiff's intestate, some two hundred feet nearer the train, undoubtedly could have heard this rumble had he been listening with his mind alert and intent upon the danger. There is no suggestion that any wind carried away the sound.

Only one of the men on the sled with Mr. Giberson was a witness at the trial. He testified that none of them saw or heard the train, but he does not testify that any, even the simplest, effort was made to get a view of the track over or around the obstacles, or that either of them listened for any whistle, bell, rumble or any other sound of a train. From his testimony it appears that Mr. Giberson and his two companions kept steadily on without stopping and seemingly, at least, without any consideration or thought upon the chance of a train passing. None of the evidence shows that he was mindful of the danger to be apprehended by the traveler at a railroad crossing, or mindful of the precautions which ought to be taken by the traveler to avoid that danger.

Much as we regret the great misfortune of the plaintiff and her intestate, it is our plain duty to declare that upon .the evidence adduced she has no legal right of action.

*Motion sustained.*