## WILLIAM F. YOUNG *vs.* SAMUEL QUIMBY.

### Penobscot.    Opinion November 30, 1903.

*Will.   Devise,* Construction.    *Words,* "Residue of my land lying on east side
of Bennoch road."   *Heirs.*

1.   In construing a will, if the court is not affirmatively convinced that the testator intended to devise certain real estate, the statute of descents must be allowed effect and such real estate be adjudged to belong to the heirs.

2.   Apart from the required formalities of execution and certain essential words to give legal effect to intention, the language of a will is to be understood in its ordinary, popular meaning unless it clearly appears it was used with some other meaning.

3.   While the word "residue" applied to estate or property generally, as in the usual residuary clause of a will, may include all the remaining estate whether in possession, remainder or reversion; when applied only to a given parcel of land its popular meaning is simply the remaining acres of that parcel, and not the remaining estate in the parcel.

4.   A testator owning a field of fifteen acres "east side of the Bennoch Road" devised the eastern five acres to his wife for life.   He then devised to a son " the residue of my (his) land lying on the east side of the Bennoch Road." *Held;* that the son took only the remaining ten acres, and that the estate in the five acres after the death of the widow was undevised and descended to the heirs.

On report.    Judgment for defendant.

Real action to recover a parcel of fifteen acres of land in Old Town, lying on the west bank of the Stillwater branch of the Penobscot River east of the Bennoch road, and south of the road leading from Gilman's Falls to Old Town.

The controversy was over the five acres immediately adjoining the river.

The plea was the general issue with the following brief statement and disclaimers:—

"And for brief statement defendant further says:   That the title in fee simple in and to an undivided three-fifths of the following described portion of the premises described in plaintiff's writ is in the defendant and not in the plaintiff, to wit: to five acres of land with

the buildings thereon, commencing at the road leading to Old Town village and running at right angles westerly a sufficient distance to embrace five acres, from thence on a line to the river.

"That he disclaims any right, title or interest in or to the remaining two-fifths of the above described land.

"That he also disclaims any right, title or interest in and to any and all the remaining land described in the plaintiff's writ."

The facts appear in the opinion.

*J. F. Gould,* for plaintiff.

Counsel contended that the will showed that the testator intended to dispose of all his property. That the will clearly showed the testator intended to devise to his son Warren all his real estate on the east side of the Bennoch road, subject only to a life estate of Sarah Lancaster in the five acres next to the river.

*W. H. Powell,* for defendant.

SITTING: WISWELL, C. J., EMERY, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

EMERY, J. Henry Lancaster, at the time of making his will, was thus situated: He had a wife and four children and some grand children by a deceased child. He owned a tract of land in Oldtown bordering on the Stillwater Branch of the Penobscot River and extending from the river westerly across the "Bennoch Road," there being fifteen acres east of that road. He also owned buildings situated on this tract next the river, and these, so far as appears, were all the buildings he owned. It does not appear whether he owned any other real estate or any personal estate outside of household furniture, some cows, a horse and a yearling colt. In this situation he made the following will:

"I Henry Lancaster of Oldtown being in full possession of mental faculties and as my last will and testament do hereby bequeath the following property of which I am in lawful possession.

To my wife Sarah Lancaster I hereby give her in her right of dower, or during her natural life, possession of all my buildings and five acres of land whereon the said buildings stand commencing at

the road leading to Oldtown Village and running at right angles westerly a sufficient distance to embrace five acres from thence on a line to the river; and also my cows and all my household furniture.

To my son Warren B. Lancaster I give the residue of my land lying on the east side of the Bennoch road, and my horse.

To my son Zelotes M. Lancaster I give all my land lying west of the Bennoch road and my yearling colt. I further give to my son Joshua Lancaster & William H. Lancaster and Rosannah F. Farrar and Judith A. Stevens and Syrene B. Burnham one dollar to each to be paid at the term of one year from my demise equally by Warren B. and Zelotes M. Lancaster.

The interlining was made before signing.

                                    Henry Lancaster."

His wife Sarah survived him and occupied the buildings and the five acres next the river according to the will. His son Warren also survived him and occupied the ten acres east of the road and between the road and the widow's five acres. The widow has now deceased and the question is what was Henry Lancaster's will respecting that five acres and the buildings after his wife's death. Was it his will that Warren should have it in addition to the ten acres specifically devised to him?

If, after all, the court finds itself unable to solve the question it must return a negative answer. If it is not affirmatively convinced that Henry Lancaster in fact intended his son Warren to have the five acres and the buildings after his wife's death, the statute of descents must be allowed full effect, and the property in question be adjudged to have descended to the heirs, even though the court is not convinced that Henry Lancaster intended it to go to his heirs. "It is a general rule that if it is uncertain and doubtful whether the testator intended to devise real estate, the title of the heir must prevail." *Blaisdell* v. *Hight,* 69 Maine, 306, 309, 31 Am. Rep. 278.

On the other hand, there is a general presumption that when a man sets down to make his last will and testament, he intends to dispose of all his property by that will and leave nothing to the operation of the statute of descents. But this is merely a presumption of

fact which may quickly disappear in any given case. Again, a will is not a legal document of the character of a statute or treaty, or court pleadings, or judgments in which certain words have a particular legal meaning often widely different from the popular meaning. Apart from the required formalities of its execution and certain essential words necessary to give effect to intention, it is like a letter written to express the writer's desire and will, and its language and words are to be understood in their ordinary, popular meaning unless it is clearly apparent they were used with some other meaning.

In this case Henry Lancaster first devised all his buildings and the five acres next to the river and on which the buildings stood to Sarah for life. He then devised to Warren "the residue of my land lying on the east side of the Bennoch road, and my horse." As already stated there were ten acres east of the Bennoch road and between that road and the widow's five acres. Pausing here to consider the meaning of the word "residue," we do not see anything in the will indicating its use in any particular technical sense. It is not applied to estate or property generally, as in the usual residuary clause of a will, but is limited to a particular parcel of "land," that "east of the Bennoch road." The first definition of "residue" given by Webster is "that which remains after a part is taken, separated, removed or designated." The first definition in the Cent. Dict. is, "that which remains after a part is taken, separated, removed or dealt with in some other way." Applying these definitions we see that the testator had first "taken, separated, removed or designated, or dealt with in some other way," the five acres next the river. "That which remained" would seem to be the ten acres and no more. Assuming, as we should, that the testator used the word "residue" in this ordinary sense, we are not convinced that he intended by it to also give to Warren the five acres and the buildings after the death of his wife. If he did really so intend he has not made it sufficiently apparent. It may be, and indeed it seems probable, that he had no intention at all in the matter, that he did not think of it. If that be so, the statute of descents and not the court must supply the omission.

Apart from the language itself one circumstance especially militates against Warren's claim. The buildings and all the testator's

buildings were on the five acres, and the five acres themselves possessed the whole river frontage. This property was therefore presumably of much comparative value. Nothing appears in the case indicating that the testator preferred his son Warren to his son Zelotes who took the land west of the road, or indicating any reason why he should so greatly prefer him to his other children as to give him all the buildings and the valuable river frontage besides the ten acres. We are not convinced that he did so intend, and hence the title of the heirs must prevail.

According to the terms of the report the plaintiff who claims under Warren must be nonsuit.

*Plaintiff nonsuit.*