VERNE C. SWAN
*vs.*
CLYDE H. SWAN ET AL.

Oxford.   Opinion, November 28, 1958.

*Henry H. Hastings,*
*Theodore Gonya,* for plaintiff.

*Willard & Hanscom,* for defendants.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SULLIVAN, J.   This is a suit in equity for the construction of a will and has been certified to this Court from the Pro-

bate Court upon an agreed statement of facts. R. S. (1954), c. 107, § 4, Par. X; R. S. (1954), c. 153, §§ 2 and 32.

The will of John S. Burbank as probated reads in its relevant sections as follows:

"After the payment of my just debts, funeral charges and expenses of administration, I dispose of my estate as follows:

"~~First: I give, devise and bequeath to Blanche L. Smith of Bethel in the County of Oxford and State of Maine the house and all land owned by me on Chapman Street in Bethel Village in said Bethel and all of the contents of said house excepting those items which are hereinafter otherwise disposed of.~~

"Second: I give and bequeath to my cousin, Verne C. Swan of Keene, New Hampshire, the oil painting of my grandfather Burbank, the old Revolutionary War sword, the Mexican War platter and any of the other paintings situated in my house which he may desire to have, said articles to go to the heirs of the said Verne C. Swan in the event that the said Verne C. Swan should not survive me.

"~~Third: I give and bequeath to the said Blanche L. Smith the sum of Six Thousand Dollars ($6,000.00) in cash.~~ Third Void John S Burbank

"Fourth: I give and bequeath the sum of one dollar ($1.00) each to the following: my cousin, Clyde Swan of Barre, Massachusetts; my cousin, Mary Bemis of Chesham, New Hampshire; my cousin, Julia Abbott of Prince Ruppert, British Columbia, Canada; Reginald Swan and Priscilla Swan, children of my late cousin, Cleon Swan.

"Fifth: All the rest, residue and remainder of the property which I shall own at my decease I give, devise and bequeath to the said Verne C. Swan, if he shall survive me. If the said Verne C. Swan shall not survive me then and in that event I give, devise and bequeath the said rest, residue

and remainder of my estate to the heirs of the said Verne C. Swan. Included in this paragraph is any and all money which I shall have received or which shall be due to me at the time of my decease as beneficiary under the will of E. Frances Burbank, late of Winchester, New Hampshire.

"Seventh: I nominate and appoint my said cousin, Verne C. Swan to be the executor of this last will and testament ~~with bond~~."

Subsequent to the probate of the foregoing will, the Probate Court, upon petition of the executor, Verne C. Swan, after hearing and with the written consent of Blanche L. Smith, decreed that:

"- - - - the revocation of the first clause of said will is effective and operates as a revocation of that clause; - - - - - the revocation of the third clause in said will is effective and operates as a revocation of that clause; - - - - - the said Blanche L. Smith has no interest as a devisee or legatee under said will."

Blanche L. Smith had thus elected to waive a contest of the partial revocations by her undersigned concurrence with the court's adjudication. No appeal was thereafter taken from such decree within the accorded statutory time limitation. R. S. (1954), c. 153, § 32. As it was said in *Merrill* v. *Winchester,* 120 Me. 203, 208:

"- - - But instead of making a codicil stating that fact he drew his pen through the several bequests so paid, *thereby making a practical physical revocation which has been accepted by all parties in interest.*" (Italics supplied)

The validity of the partial revocations by cancellation is premised and postulated by the litigants here.

The parties to the instant case are all first cousins of the testator, John S. Burbank, and comprise his total next of kin.

This court is invoked to determine whether the property which had been affected by the revoked clauses, First and Third, of the will and which belonged to the testator at the time of the execution of his will and until his death is dispensed by the residuary clause into the sole ownership of the complainant or devolves in succession to the next of kin of John S. Burbank as intestate property.

The office of interpreting a will is essentially, by dint of the literal meaning of that self-defining term, "will," the process of realizing to what expressed effect the testator exerted his "power of choosing and of acting in accordance with choice." Such has long been a legal maxim.

> "Our task is to find the intent of the testator and to give effect to his intention if possible. The governing principles were well stated by Chief Justice Pattangall in *Green v. Allen, et al., 132 Me. 256, 258, 170 A. 504, 505*:
>
> 'The controlling rule to be applied in construing the meaning and force of the provisions of a will is that the intention of the testator as expressed must govern, unless it is inconsistent with legal rules. Such intention may be determined by an examination of the whole instrument, including its general scope, logical implications and necessary inferences. Language may be changed or moulded to give effect to intent, Hopkins v. Keazer, 89 Me. 345, 36 A. 615, and intent will not be allowed to fail for want of apt phrase or conventional formula, Fuller v. Fuller, 84 Me. 475, 24 A. 946'."
>
> *Wing, Adm'x. C. T. A.* v. *Rogers* (1953), 149 Me. 340, 343.

> "What was the testator's intention? Are the terms of his will such that we can give effect to that intention consistently with the rules of law? These are the fundamental inquiries, upon the answers to which the rights and duties of the parties depend."
>
> *Fox* v. *Rumery,* 68 Me. 121, 123.

For the construction of wills reason supplies certain rebuttable presumptions and standards deducible from the very contemplation of the undertaking. By this process our court has compiled certain sensible tests variously paraphrased in the following precedents:

> " 'The courts have for a long time inclined very decidedly against adopting any construction of wills which would result in partial intestacy, unless absolutely forced upon them. This has been done partly as a rule of policy, perhaps, but mainly as one calculated to carry into effect the presumed intention of the testator.' "

*Fox* v. *Rumery,* 68 Me. 121, 124.

> "- - - there is a general presumption that when a man sets (sic) down to make his last will and testament, he intends to dispose of all his property by that will and leave nothing to the operation of the statute of descents. But this is merely a presumption of fact which may quickly disappear in any given case. - - -"

*Young* v. *Quimby,* 98 Me. 167, 169.

> "We must also bear in mind the presumption against intestacy, Fox v. Rumery, 68 Me. 121; Davis v. Callahan, 78 Me. 313, 5 A. 73; Spear v. Stanley, 129 Me. 55, 149 A. 603."

*Wing, Adm'x. C. T. A.* v. *Rogers* (1953), 149 Me. 340, 344.

> "- - - Such a construction would not only be contrary to the express language of the residuary clause, and would uphold only a portion instead of the whole will, but would result in partial intestacy, a result which courts in this country and in England have for a long time sought to avoid unless absolutely forced upon them. It would also be contrary to the introductory words of the will by which the testator at the outset professes to dispose of all his worldly estate in the manner which he indicates - - - -"

*Davis* v. *Callahan,* 78 Me. 313, 318.

"A will is to be construed as of the date of its execution, even though it does not become operative until the death of the maker. Cook v. Stevens, 125 Me. 380; Torrey v. Peabody, supra." (97 Me. 104.) *Spear* v. *Stanley* (1930), 129 Me. 55, 60.

"Intention is to be ascertained from examination of the whole instrument. It is the intention of the maker of the will at the time of its execution. Gorham v. Chadwick, 135 Me. 479, 482, 200 A. 500, 117 A. L. R. 805; Merrill Trust Co. v. Perkins, 142 Me. 363, 53 A. 2d 260; Bryant v. Plummer, 111 Me. 511, 90 A. 171."

*New England Trust Co.* v. *Sawyer* (1955), 151 Me. 295, 301.

"- - - the court will, if possible, adopt such construction as will uphold all the provisions of the will - - - The will is to be viewed and construed as a whole - - -"

*Davis* v. *Callahan*, 78 Me. 313, 318.

"- - - And that rule is that the expressed intention of the testator as gathered from the language of the whole will, read, in case of doubt, in the light of surrounding conditions, must control, unless in contravention of positive rules of law, Crosby v. Cornforth, 112 Maine, 109. - - -"

*Philbrook* v. *Randall*, 114 Me. 397, 398.

" 'Because the testator is supposed to take the particular legacy from the residuary legatee only for the sake of the particular legatee; so that upon the failure of the particular intent, the court gives effect to the general intent' (See *Drew v. Wakefield, 54 Me. 291, 296* as to devises.)

"To be sure the testator may by the terms of the bequest narrow the title of the residuary legatee so as to exclude lapsed legacies. Dunlap v. Dunlap, 74 Maine, 402; - - -"

*Emery* v. *Union Society*, 79 Me. 334, 343.

See, also, *Stetson* v. *Eastman*, 84 Me. 366, 369.

These rational and empirical precepts in their substance are of considerable reliable assistance in interpreting the expressed intent of the testator.

In the instant case the will of John S. Burbank as an integral document with its unobliterated cancellations assented to by all parties, the agreed statement of the litigants and the court record are the source of several pertinent facts and derivative conclusions.

Subsequent to the execution of the will but prior to the partial revocations Blanche L. Smith profited by a legacy and a devise settled upon her by an unnamed benefactor other than this testator.

The will contains the stereotyped liminal statement, "I dispose of my estate as follows:" This might merely constitute a formal coincidence but cumulatively may bear meaning. *Davis* v. *Callahan,* 78 Me. 313, 318, *supra.*

The testator left no widow or direct descendants. Surviving him were collateral kin only.

At the time of execution of the will the near relatives with the significant exception of the complainant were each affirmatively and summarily disqualified from substantial bounty by a token legacy of one dollar each. And so it was with two second cousins. The complainant, if alive at the demise of the testator, or his heirs in the alternative was and were selected as the repository of those unique chattels authenticating and witnessing the historic American tradition in the Burbank family. In his family consciousness the testator thus turned to the complainant. Verne C. Swan was designated sole residuary legatee and devisee of the testator's estate and his heirs by substitution in the event the complainant predeceased the testator. The testator paused over the residuary disposition in a sort of abundance of caution to be exhaustive by a specific inclusion of any rights

and credits he might have against the estate of E. Frances Burbank. It could be purely specious to observe or it might be indicative that the residuary section contains the somewhat unusual wording, "All the rest, residue and remainder *of the property which I shall own at my decease,* I give, devise and bequeath," etc. (Italics supplied.) Verne C. Swan was nominated executor.

The entire context of the will as originally executed discloses a deliberated and striking effort to preclude intestacy. It evidences some generosity, gratitude or obligation toward Blanche L. Smith with an otherwise sole preference for Verne C. Swan or his surviving kin. The partial revocations occasioned by the fortuitous good fortune of Blanche L. Smith and following upon the execution of the will inferentially disburdened the testator from apprehensions and solicitude for her but even with the deletions the abiding consistency and tenor of the instrument generally give preponderance to the conclusion that the cancelled legacies and devise were purposed by the testator to redound to the enlargement of the residuum.

It should be noted that the testator with his cancellations made no attempt to add any positive provisions to his will by interlineations, writings, alterations or otherwise and gave no indication that his acts of revocation were induced by or were concurrent with any plan of his to make a new will.

Objection has been made that to tolerate here such a translocation of the property which had been the subject matter of the revoked sections is to condone the augmenting of the residue by an act of the testator after execution of the will without requiring the necessary formalities and attesting prescribed by the Statute of Wills. R. S. (1954), c. 169, § 1, P. L., 1957, c. 302; R. S. (1954), c. 169, § 3. Thus it is contended that the chattels and realty concerned must

devolve by intestacy to the next of kin in spite of the manifested desire of the testator to the contrary. There is a hard core of formal logic in such a position but the contrary opinion which entails only danger, if any, more speculative than realistic is better adapted to achieve justice. There is considerable and eminent authority in accord with our reasoning.

"- - - The revocation may, however, enlarge the residuary gift; and this has been held to create a new disposition. But the more liberal view of the majority is that the residuum is a 'catch-all' gift and that the increase passes under a properly attested clause. - - -" 23 Harvard Law Review, Notes, 558, 559.

"In this case, there is nothing to indicate an intention on the part of the testator that the property covered by the revoked clauses should not go to the residuary devisees. The residuary clause is expressed in the broadest terms. 'I give, bequeath and devise all the rest, residue and remainder of my estate of every description, of which I shall die seised and possessed.' The intention of the testator is clear, to give all his property, not otherwise disposed of by the will, to the trustees named therein, for the support of the charity established by the nineteenth clause. He revoked the sixth and thirteenth clauses, and purposely and intelligently left the other provisions to stand as his will. The only fair inference is that he intended that the property covered by those clauses, and which by his revocation became undisposed of by the other clauses of the will, should fall within the residuary clause. We are of opinion that this case falls within the general rule, and that the property in question passes to the residuary devisees.

"The argument of the appellants, that this view is in conflict with the provisions of law which require that a will disposing of property should be executed in the presence of three witnesses, is not

sound. It is true that the act of revocation need not be done in the presence of witnesses; but such act does not dispose of the property. It is disposed of by the residuary clause, which is executed with all the formalities required in the execution of a testamentary disposition of property."

*Bigelow* v. *Gillott* (1877), 123 Mass. 102, 107.

See, also, *Batt* v. *Vittum,* 307 Mass. 488, 30 N. E. (2nd) 394.

"In the case now being considered, there is a gift to a supposed wife of the whole of testator's property so long as she remained his widow, and thereafter to his two sons. The gift to the wife was made by the third clause of the will, and to his sons by the fourth clause. The obliterations applied to the third clause are sufficient to destroy its effect as a testamentary act, indicating an intention on the part of the testator to revoke it so far as it contained a gift to his wife, and, as it had no other purpose, the obliterations are sufficiently extensive to entirely destroy it, the effect of which was to cast into the residue of the estate given to the sons that which had been previously given to the wife. It was not an alteration of the third clause, but a complete revocation of the devise given by it. The gift to the sons of all of his estate after the death or remarriage of his wife was a gift of all of the residue remaining after the satisfaction of the prior gift to her. The act of revocation does not dispose of the property that is disposed of by the gift to the sons. Bigelow v. Gillott, supra. I am therefore of the opinion that the revocation of the gift to the wife was valid, and is not, under our statute, made nugatory because the incidental effect of such revocation increases the residue of the estate given to the sons. - - - -"

*Collard* v. *Collard* (N. J.), 67 Atl. 190, 191.

"- - - The increase of the residuary estate which may result from the obliteration is not a new testamentary disposition, but a mere incidental conse-

quence resulting from the exercise of the power conferred on the testator by the statute - - -"

*Brown* v. *Brown* (S. C.), 74 S. E. 135, 136.

"It must be remembered that in the case now before the Court there was a cancellation of the words comprising the fifth item, only, and there was no attempt on the part of the testatrix to make any other changes or alterations in her will, as executed, by interlineations or writing on the face of it. The result of the cancellation was not to make a new will in any respect, it was only to take out of the will so much thereof as had been cancelled. It had no effect on any other item except such as might result to the residuary clause. While the cancelling of item five did have the effect of increasing that part of the estate disposed of by the residuary clause, yet when she executed her will, it was her intention that such part of her estate as was not otherwise specifically devised or bequeathed should go to her residuary legatees and devisees; and when she revoked the fifth item, it is reasonable to believe that no longer having specifically devised the property which was the subject of the fifth item, then it was her intention that such property should take its place with that other part of her property of which disposition had been made in the residuary clause, unless this should be contradictory to the declared purpose of the testatrix as found in other parts of the will. There is nothing in Mrs. Simpson's will to show a contradictory purpose with respect to the property originally devised in the fifth item.

"While the effect of the cancellation in the present case was to make a change in the will to the extent of increasing her residuary estate, yet this may be regarded as an incident to the cancellation and not such a change in the original will as could be made only by a codicil or a new will."

*Meredith* v. *Meredith*, 35 Del. 35, 157 A. 202, 24 A. L. R. (2nd) 514, 553.

Compare *In re Gorrell's Estate* (1941), 19 N. J. Misc. 168, 19 A. (2nd) 334, 338; In re *Frothingham's Will* (N. J.), 74 Atl. 471.

We accordingly decide that in conformity with the intent of the testator as we have interpreted it the personalty and realty described in the First and Third clauses or sections of the will when executed have passed via the residuary clause into the ownership of Verne C. Swan, sole residuary legatee and devisee.

The mandate must be:

*Case remanded to the Probate Court for the County of Oxford in Equity for the entry of a decree in accordance with this opinion.*