Antanos IOZAPAVICHUS

v.

Louise FOURNIER, Executrix.

Supreme Judicial Court of Maine.

July 31, 1973.

Mitchell & Ballou by John W. Ballou, James E. Mitchell, Bangor, for plaintiff.

Whiting & Kendall, by James H. Kendall, Rumford, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEBBER, Justice.

Joseph Ramon died on April 7, 1970 at the age of 81, a resident of Mexico, Maine. He had come to America from Lithuania in 1911 and found employment in the paper mill where he worked until his retirement in 1958. Ramon never married. He formed a close friendship with another Lithuanian couple, Walter and Bessie Sotman, and in 1927 he came to live with

them. Ramon paid a modest amount for board and lodging but in all respects regarded himself and was treated by the Sotmans as a member of the "family." This arrangement continued until 1966 when the ravages of arteriosclerosis made it necessry to have Ramon cared for outside the home, first in a nursing home and finally in the State Hospital where he ended his long life.

Ramon never returned to the U.S.S.R. and was never visited by relatives from the old country. The appellant, a Russian citizen proceeding *in absentia* through his Maine counsel, claims to be the son of Ramon's deceased sister and as such Ramon's only heir. Although some correspondence seems to have passed between Ramon and his late sister, there is no suggestion that any contacts were ever established between Ramon and his nephew in the Soviet Union.

The appellee Louise Fournier is the daughter of Walter and Bessie Sotman. Until 1947 she resided with her parents and Ramon in her parents' home. She then moved with her husband into the second floor apartment in her parents' house and from this vantage point she assumed and continued the care of her parents and Ramon as long as they lived. It is apparent that Ramon regarded Louise, to whom he referred as "my Louisa," as a favorite niece upon whom he depended for the loving care and service which ordinarily attends a close family relationship. As a token of his gratitude in 1951 he gave her the money to purchase a new car in which he was frequently a passenger. He made her joint owner of some of his bonds and beneficiary of his life insurance policy. He gave her access to his safe deposit box so that she could care for his papers. In 1964 at his request she was appointed as his guardian.

Walter Sotman died in 1953. On November 1, 1957 Joseph Ramon executed the will which is before us for interpretation. The disposing portion thereof provided:

"First: I give, bequeath and devise all my estate real, personal and mixed, wherever found and whenever acquired, to Bessie Sotman and Mrs. Louise Fournier of Mexico, Maine, to be equally divided between them, share and share alike.

Second: I purposely and intentionally omit all my relatives from this my Last Will and Testament.

Third: I name and appoint Mrs. Louise Fournier executrix of this, my Last Will and Testament, and I request that she be allowed to serve without bond."

Bessie Sotman predeceased the testator in 1966, thus precipitating the problem before us. The Probate Court concluded that Paragraph First, construed in the light of Paragraph Second and the surrounding circumstances, constituted a class gift to Mrs. Sotman and Mrs. Fournier as a family unit and that Mrs. Fournier takes the entire estate. The appellant contends that the gift was to the beneficiaries as individuals and that the lapsed legacy to Mrs. Sotman passes to him by intestacy. On appeal to the Superior Court sitting as the Supreme Court of Probate, the case was there reported to the Law Court for the resolution of important questions of law.

∎ In accordance with well established principles we seek the intention of the testator at the time of his execution of the will. We look first to the whole instrument. "In case of doubt the intention is to be ascertained in the light of the existing conditions, which may be supposed to have been in testator's mind." New England Trust Co. v. Sanger (1955) 151 Me. 295, 302, 118 A.2d 760, 764.

∎ We are aware, as was the Court in In Re: Will of Susan G. Edwards (1965) 161 Me. 141, 149, 150, 210 A.2d 17, that competing presumptions are involved, (1) that a gift to named individuals, especially when accompanied by the words

"share and share alike," is intended as a gift to individuals and not a class gift, and (2) that a testator does not intend that any part or all of his estate shall pass by intestacy. The Edwards Court concluded that the presumptions tended to equalize each other and said:

"Casting the rules of construction solely in terms of presumptions serves, in our view, to hinder rather than aid in our search for the intention of the testatrix. With competing rules applicable to the agreed facts, the presumptions lost their force in establishing the burden of going forward. The weight of the several facts, e. g., named persons related, 'share and share alike,' resulting intestacy and the like, remains for the Court to determine in reaching the ultimate finding of intention. We may properly consider that facts which create 'a strong presumption of testamentary intent,' * * * are facts from which a strong inference of such intent may be drawn."

■ It is understandable that appellant relies somewhat heavily on *Edwards*. In that case the testatrix left the residue of her estate to her three nieces, naming them, "share and share alike." One of these beneficiaries having predeceased the testatrix, the issue arose as in the instant case with respect to the disposition of her share. If the share was to pass by intestacy, the grandchildren of the testatrix would take as heirs. On the particular *Edwards* facts, the Court concluded that this was the proper disposition and that "the testatrix intended each niece to take a one-third share, and no more." It has long been recognized, however, that "precedents are uncertain guides in the interpretation of a will." Maine National Bank v. Petrlik (1971–Me.) 283 A.2d 660, 664. "No two wills are ever precisely alike. No two testators are situated precisely the same, and it is both unsafe and unjust to interpret the will of one man by the dubious light of the construction given by a court of justice to the will of another." Perry v. Leslie (1924) 124 Me. 93, 98, 126 A. 340, 343. So here the *Edwards* facts differ from those in the case at bar in significant respects. Mrs. Edwards made other specific provisions for her three nieces in differing amounts and upon differing terms and conditions. Her nieces by no means constituted the only "family" she knew. Her will contained no express exclusion of her grandchildren as takers which might be compared with the provisions of Paragraph Second of the Ramon will. On the contrary she established a trust for the benefit of her grandchildren, thus negativing any thought that she intended to exclude them from her bounty. We are satisfied that the *Edwards* facts are distinguishable and the circumstances surrounding the making of the Ramon will very different from those disclosed in *Edwards*.

Two other cases cited by appellant require only brief comment. They are Strout v. Chesley (1926) 125 Me. 171, 174, 132 A. 211 and First Portland Nat. Bank v. Kaler-Vaill Mem. Home (1959) 155 Me. 50, 151 A.2d 708. Suffice it to say that the individuals and organizations named to share the residue in the respective wills in these two cases enjoyed no such close relationship to the testators or to each other as is evident in the Ramon situation. As the Court said in *Strout* (quoted in *Kaler-Vaill*), "The individuals were not connected with the testatrix or with one another by common kinship. Apparently they had nothing in common except the good fortune of being legatees in the same will." It is not surprising that the Court in these two cases could discover no intention to create a class gift.

■ In seeking the intent of a testator it is appropriate to heed the close family ties and personal relationships existing between a testator and potential takers under his will, (See Gannett v. Old Colony Trust Co. [1959] 155 Me. 248, 153 A.2d 122), and to attach importance to a testamentary provision expressly excluding heirs from taking any part of an estate. Wing, Adm'x.

v. Rogers (1953) 149 Me. 340, 107 A.2d 708; Swan v. Swan (1958) 154 Me. 276, 147 A.2d 140. In *Swan* it was stated, "The entire context of the will as originally executed discloses a deliberated and striking effort to preclude intestacy."

In a situation involving a very close friendship between a testatrix and the two beneficiaries of her residuary estate, one of whom predeceased the testatrix by three months, the New Hampshire Court in In Re Estate of Devin, (1967), 108 N.H. 190, 230 A.2d 735, authorized distribution of the residuum to the survivor. It was there stated, "We apply the class gift concept to effectuate her real purpose, even though the language of the residuary clause is not ordinarily calculated to create a class gift. * * * Sarah and Elizabeth Frost had a natural relationship to each other and constituted a family group which was associated with the testatrix in a common and mutual connection. They had common attributes in their relation to the testatrix and to each other. * * * It is not necessary to the class gift concept that the legatees be blood relatives of the testatrix." It may be noted that this result was reached without the fortifying effect of a testamentary clause expressly excluding heirs such as is present in the Ramon will.

In Re Hunter's Estate (1920), 212 Mich. 380, 180 N.W. 364 reached a like result on these facts. The testator left his estate to A and B (sisters of testator) share and share alike. By express provision he "intentionally omitted" C (his half sister) and "all other relatives." B died before the testator. The Court found a class gift to A and B with an expressed intention that no one else should take. A was entitled to the whole.

◼ We are satisfied that the provisions of this will, viewed in the light of the surrounding circumstances, lead to the inescapable conclusion that Joseph Ramon intended a class gift to Bessie Sotman and Louise Fournier *and no one else.* Louise Fournier, as properly ordered by the Pro-

bate Court, takes the entire estate as the surviving member of the class.

The entry will be

Appeal denied. Costs and reasonable fees to counsel for the several parties to be fixed in the Probate Court, ordered paid by the Executrix, and charged in her probate account.

All Justices concurring.